In the Matter of the TITLE, BALLOT TITLE AND SUBMISSION CLAUSE, AND SUMMARY INCLUDING the ESTIMATE OF FISCAL IMPACT AND EXPLANATION THEREOF PERTAINING TO the MINERAL PRODUCTION TAX INITIATIVE ADOPTED ON JANUARY 27, 1982.

**No. 82SA103.**

Supreme Court of Colorado,
En Banc.

April 19, 1982.

Sisk, Foley, Hultin & Driver, Paul F. Hultin, Denver, for petitioner, D. Roger Loper.

Stephen E. Thompson, Denver, for proponents, Initiative on Mineral Policy Assisting Colorado Taxpayers, Inc.

J. D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarkey, Sol. Gen., Kristie Hansen, Asst. Atty. Gen., Denver, for Initiative Title Setting Bd.

LEE, Justice.

This is an original proceeding brought pursuant to sections 1–40–101 and 1–40–102, C.R.S.1973 (1980 Repl.Vol. 1B), by D. Roger Loper (petitioner), a qualified elector. He challenges the fairness and accuracy of the title, submission clause, and summary prepared by the Initiative Title Setting Review Board (board) composed of the secretary of state, the director of the legislative drafting office, and the attorney general, regarding a proposed initiative to amend

the Constitution of Colorado. Petitioner requests this court to reverse the action of the board and remand to the board with instructions to correct alleged errors in the form and content of the title, submission clause, and summary.[1] We affirm the action of the board.

The proposed constitutional amendment is as follows:

"BE IT ENACTED BY THE PEOPLE OF THE STATE OF COLORADO THAT ARTICLE X OF THE CONSTITUTION OF THE STATE OF COLORADO BE AMENDED BY THE ADDITION OF A NEW SECTION TO READ:

Section 21 *Mineral production tax.*

(1) The state shall levy and collect a tax on the production of metallic minerals and mineral fuels as hereafter provided. Tax rates shall be established for each metallic mineral and mineral fuel by the general assembly in such a manner that the annual aggregate revenues derived shall equal not less than five percent (5%) of the estimated total value of all metallic minerals and mineral fuels to be produced each year in Colorado. In the event that such revenues derived for any taxable year shall be less than five percent (5%) of the actual total value of all metallic minerals and mineral fuels produced in Colorado in that year, then the general assembly shall adjust the tax rates for subsequent years as may be necessary to fully compensate for such deficiency within three taxable years thereafter.

(2) The proceeds from such tax shall be deposited in a mineral production tax fund, hereby created in the office of the state treasurer, and shall be appropriated by the general assembly as follows:

(a) Seventy-five percent (75%) shall be appropriated exclusively as follows: a portion shall be designated for assistance to counties, municipalities, school districts and other political subdivisions affected by the development, production or processing of such metallic minerals and mineral fuels, and the balance, if any,

shall be appropriated for any or all of the following purposes: education; energy conservation and use of renewable energy sources; health and human services; housing; open space, parks and wildlife habitat; transportation; and water resource development and conservation for agricultural, domestic and municipal purposes.

(b) Twenty-five percent (25%) shall be credited to a perpetual trust fund, hereby created in the office of the state treasurer, and shall be held in trust. No portion of the principal of such trust fund shall be expended by the state except upon approval of three-fourths of all members elected to each house of the general assembly in accordance with the other provisions of Section 22 of Article V or upon approval of an initiated or referred law by the people of Colorado; provided, however, that the principal may be invested in, collateralize, or secure payment of bonds or other securities issued by state authorities, local governments and other political subdivisions, or invested in such other manner as provided by law for state moneys. The income earned upon the principal shall be appropriated by the general assembly only for the promotion, development and utilization of energy conservation and renewable energy sources.

(3) Any principal of the severance tax trust fund, created pursuant to the provisions of 39–29–109 C.R.S.1973, and amendments thereto, and any repayments or income accruing to such fund shall be credited to the trust fund referred to in subsection (2)(b) above and shall be subject to the provisions contained in said subsection.

(4) As used in this section, "metallic minerals" means molybdenum, uranium, silver, vanadium, tungsten, lead, gold, zinc, tin, iron, pyrite, copper, cadmium and such additional metallic minerals as designated by the general assembly; "mineral fuels" means crude oil, natural gas, oil and gas, coal, lignite, shale oil and

---

1. The title, submission clause, and summary fixed by the board is set forth in Appendix A.

such additional mineral fuels as designated by the general assembly; "value" means the full market value; and "production" and "produced" refer to severance from the earth.

(5) The general assembly shall enact, amend or repeal such laws as are necessary to implement the provisions of this section, to be effective January 1, 1984.

(6) The tax created herein is not to be deemed a property tax nor to be subject to the limitations contained in Section 11 of this Article."

We are guided in our review of the action of the board by the well-established test enunciated in *Bauch v. Anderson*, 178 Colo. 308, 497 P.2d 698 (1972):

"(1) [W]e must not in any way concern ourselves with the merit or lack of merit of the proposed amendment since, under our system of government, that resolution rests with the electorate; (2) all legitimate presumptions must be indulged in favor of the propriety of the board's action; and (3) only in a clear case should a title prepared by the board be held invalid. . . ."

### I.

The petitioner challenges the summary on several grounds. First he asserts that the language of the summary is not clear with respect to the taxation of oil shale. Specifically, it is contended that "shale oil," one of the mineral fuels designated in the proposed amendment and the summary, is substantially different from "oil shale," the mined mineral severed from the earth. It is argued that shale oil is a product of an expensive refining process, and that any tax on shale oil would in effect be a "value added" tax which would tax the increase in value as a result of refining processes. Because the petitioner argues that this result is not in accord with the intent of the proponents of the amendment, he urges that the summary be amended to include the following:

"[I]t is not the intent of the proposed constitutional amendment to discriminate against oil shale or treat it any different-ly from any other mineral fuel as defined in the measure and furthermore it is not the intent of the proposed constitutional amendment to direct the general assembly to levy a value added tax on metallic minerals and mineral fuels produced in the State of Colorado."

The duty of the board pursuant to section 1–40–101(2), C.R.S.1973, is to "prepare a clear, concise summary of the proposed law or constitutional amendment. The summary shall be a true and impartial statement as to the intent of the proposed law or constitutional amendment and shall not be an argument, nor likely to create prejudice, either for or against the measure."

Since the duty of the board is to impartially summarize the stated intent of the amendment, but not to argue for a certain interpretation, it would be inappropriate to interpret the language of the proposed amendment as the petitioner urges. Furthermore, it is not our function in this review proceeding to determine the meaning of the language of the amendment; rather, a judicial interpretation must await an adjudication in a controversy arising in a specific factual context. *In Re Proposed Initiative on Tr. of Real Estate*, Colo., 611 P.2d 981 (1980). Similarly, this court must not concern itself with the merit or lack of merit of the proposed amendment, since a determination of the wisdom of the amendment is properly left to the qualified voters of this state. *Bauch v. Anderson, supra.* We hold that, as concerns this phase of petitioner's argument, the summary as written is sufficient to fairly and clearly paraphrase the stated intent of the amendment.

### II.

Next, the petitioner argues that if the amendment is approved by the voters, the tax it creates will replace the severance tax now in effect. Thus it is argued that the summary should include a reference to the existing severance tax and the effect of replacement by this tax. We do not agree with this proposition.

This court has previously rejected the argument that a summary must mention the effect of the amendment on an existing statute addressing the same or a similar subject as the proposed amendment. *See In Re Proposed Initiative on Tr. of Real Estate, supra.* The summary prepared by the board states: "The amendment provides for the transfer of money from the present state severance tax trust fund . . . ." This language accurately paraphrases the language of the amendment regarding the severance tax trust fund, and no other language in the amendment states an intent to repeal the existing severance tax law. Any other assumptions regarding the effect of the proposed amendment would be speculative and inappropriate in light of the statutory standards set for the drafting of the summary. Section 1–40–101(2), C.R.S.1973.

### III.

■ The petitioner next contends that the statement in the summary of the estimated fiscal impact of the proposed amendment is inaccurate. We do not agree. The board is charged with the responsibility of including in the summary "an estimate of any such fiscal impact, together with an explanation thereof." Section 1–40–101(2), C.R.S.1973.

The board sought assistance from the Office of State Planning and Budgeting, the Legislative Council Staff, the Department of Revenue, and the Department of Local Affairs, which calculated estimated revenues of $113,000,000 based upon five percent (5%) of the adjusted total gross metallic mineral and mineral fuel value for the calendar year 1980. The statement of the estimated fiscal impact in the summary is as follows:

"Based on the 1980 production figures, this amendment is estimated to raise over one hundred million dollars each year."

The conservative estimate is thirteen million less than the actual figures from 1980 because of the board's concern that costs of the Department of Revenue might increase if additional administrative staff were needed to implement the tax. The petitioner's supporting affidavit, submitted at the March 1, 1982 hearing before the board, indicated that the estimated administrative costs amounted to less than 0.5% of projected revenue. Admittedly, this estimated cost figure was based on costs of administering the severance tax currently in effect. Section 39–29–101, *et seq.*, C.R.S.1973 (1981 Supp.). Based upon the information reviewed by the board, the estimate of the fiscal impact stated in the summary satisfies the requirement of the statute.

It is suggested that the statement of fiscal impact is deficient because it fails to mention the effect on revenues resulting from a repeal of the existing severance tax statute. We do not agree for the reason that, as previously noted, the language of the amendment does not call for the repeal of the severance tax. Thus, a statement concerning the effect of the possible repeal of the statute would be speculative and inappropriate.

The petitioner also argues that the summary should state that the costs of the administration of the tax will fall upon the state's general fund, since the amendment does not specify that the costs of collecting the tax will be deducted from the proceeds. Again, we hold that such interpretation is beyond the scope of the summary and is improper. The language of the amendment does not deal with the cost of administering the tax. Thus, the payment of the cost of the administration of the tax is a detail left to the discretion of the General Assembly, should the tax be enacted. Any discussion in the summary of the financing of the tax would be speculative and improper. *See In re an Initiated Constitutional Amendment Respecting Rights of the Public to Uninterrupted Services by Public Employees,* 199 Colo. 409, 609 P.2d 631 (1980).

### IV.

■ Finally, the petitioner challenges the phrasing of the title, submission clause, and summary with regard to the various allocations of revenue required by section (2)(a) of the proposed amendment. The

summary states: "The amendment would require three-fourths of the proceeds from the tax to be used for impact assistance to municipalities and political subdivisions *and* for education, energy conservation, renewable resources, health and human services, housing, open space, parks and wildlife habitat, transportation, and water." (Emphasis added.) This language parallels the language of the amendment, except omitted after the italicized word "and" above is the phrase "the balance, if any, shall be appropriated for any or all of the [enumerated purposes]."

The petitioner argues that the use of the word "and" in the summary would mislead the reader to believe that the tax will fund more than impact assistance, whereas the the amendment itself authorizes additional expenditure only after assistance has been provided for counties, municipalities, school districts, or other political subdivisions for the impact caused by the development, production, or processing of metallic minerals and mineral fuels. In our view, the language of the summary does not unfairly misrepresent the intent of the amendment. Although in this respect the summary might have been more precise, we do not regard the omission of the amendment language as a fatal flaw in the summary statement. It is not the function of this court to rephrase the language of the summary and title in order to achieve the best possible statement of the intent of the amendment. If the chosen language fairly summarizes the intent and meaning of the proposed amendment, without arguing for or against its adoption, it is sufficient. *See Say v. Baker*, 137 Colo. 155, 322 P.2d 317 (1958).

The action of the board is affirmed.

## APPENDIX A

### 82SA103

### "PROPOSED INITIATIVE ON A MINERAL PRODUCTION TAX

The title as designated and fixed By the Board is as follows:

AN AMENDMENT TO ARTICLE X OF THE CONSTITUTION OF THE STATE OF COLORADO, PROVIDING THAT THE GENERAL ASSEMBLY ENACT A TAX ON THE PRODUCTION OF EACH METALLIC MINERAL AND MINERAL FUEL SO THAT SUCH TAX REVENUES EQUAL NOT LESS THAN FIVE PERCENT OF THE VALUE OF PRODUCTION, AND PROVIDING THAT THREE-FOURTHS OF SUCH REVENUES BE USED FOR IMPACT ASSISTANCE TO POLITICAL SUBDIVISIONS AND FOR OTHER SPECIFIED PURPOSES, AND THAT ONE-FOURTH OF SUCH REVENUES BE PLACED IN TRUST AND EXPENDED ONLY BY THE GENERAL ASSEMBLY BY THREE-FOURTHS VOTE OR BY VOTE OF THE PEOPLE, WITH THE INCOME FROM THE TRUST TO BE USED FOR ENERGY CONSERVATION AND RENEWABLE ENERGY SOURCES.

The ballot title and submission clause as designated and fixed by the Board is as follows:

SHALL THE CONSTITUTION OF THE STATE OF COLORADO BE AMENDED TO PROVIDE THAT THE GENERAL ASSEMBLY ENACT A TAX ON THE PRODUCTION OF EACH METALLIC MINERAL AND MINERAL FUEL SO THAT SUCH TAX REVENUES EQUAL NOT LESS THAN FIVE PERCENT OF THE VALUE OF PRODUCTION, AND TO PROVIDE THAT THREE-FOURTHS OF SUCH REVENUES BE USED FOR IMPACT ASSISTANCE TO POLITICAL SUBDIVISIONS AND FOR OTHER SPECIFIED PURPOSES, AND THAT ONE-FOURTH OF SUCH REVENUES BE PLACED IN TRUST AND EXPENDED ONLY BY THE GENERAL ASSEMBLY BY THREE-FOURTHS VOTE OR BY VOTE OF THE PEOPLE, WITH THE INCOME FROM THE TRUST TO BE USED FOR ENERGY CONSERVATION AND RENEWABLE ENERGY SOURCES?

The summary prepared by the Board is as follows:

The proposed amendment to the Colorado constitution would require the general assembly to enact a tax on the production of each metallic mineral and mineral fuel so

that such annual tax revenues equal not less than five percent of the estimated value of that production in each year. If revenues are less than five percent of actual value, the tax rates on metallic minerals and mineral fuels shall be adjusted in later years to compensate for the deficiency.

The amendment would require three-fourths of the proceeds from the tax to be used for impact assistance to municipalities and political subdivisions and for education, energy conservation, renewable resources, health and human services, housing, open space, parks and wildlife habitat, transportation, and water. The remaining one-fourth of the proceeds would be placed in a perpetual trust fund, any part of the principal of which could be spent upon approval by three-fourths vote of the general assembly or approval by the people of Colorado. The amendment specifies that the principal of the trust fund may be invested and that the income therefrom may be used only for energy conservation and renewable energy sources.

The amendment provides for the transfer of money from the present state severance tax trust fund to the new trust fund and defines "metallic minerals", "mineral fuels", "value", "production", and "produced". The amendment requires the general assembly to enact such tax and other necessary laws to implement the amendment by January 1, 1984.

Based on 1980 production figures, this amendment is estimated to raise over one hundred million dollars each year.

January 27, 1982"