In the Matter of the TITLE, BALLOT TITLE AND SUBMISSION CLAUSE, AND SUMMARY PERTAINING TO the SALE OF TABLE WINE IN GROCERY STORES INITIATIVE ADOPTED ON MARCH 24, 1982, and Petition for Rehearing Denied on April 26, 1982.

Laurence A. Peterson, Movant on the Petition for Rehearing.

In the Matter of the TITLE, BALLOT TITLE AND SUBMISSION CLAUSE, AND SUMMARY PERTAINING TO the SALE OF TABLE WINE IN GROCERY STORES INITIATIVE ADOPTED ON MARCH 24, 1982, and Petition for Rehearing Denied on April 26, 1982.

Bernie Jones, Meredith McBurney, Art Chapman, Sandy Woock, Nancy Lacey, Mike Roberts, Ron Yost, Jan Moore-Kirkland, Ken Kirkland, Robert Gillis, Gary Jones, Stella Logan, Don Logan, Chris Citron, Mary Pelletier, Denzil J. Inman and William Pace, Movants on the Petition for Rehearing.

Nos. 82SA210, 82SA211.

Supreme Court of Colorado,
En Banc.

June 21, 1982.

Hays & Wilson, Frank L. Hays, James C. Wilson, Jr., Denver, for movant, Laurence A. Peterson.

Rothgerber, Appel & Powers, Marcia M. Hughes, L. Michael Henry, Denver, for movants, Bernie Jones, et al.

Vanatta, Spelts & McGuire, P. C., Richard J. Spelts, Scott F. Sullan, Denver, for proponents, Consumers for Convenient Shopping.

J. D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarkey, Sol. Gen., Richard H. Foreman, First Asst. Atty. Gen., Denver, for Initiative Title Setting Bd.

ROVIRA, Justice.

In an original proceeding brought pursuant to sections 1–40–101 and 102, C.R.S. 1973 (1980 Repl.Vol. 1B & 1981 Supp.), Laurence A. Peterson (petitioner), a qualified elector, challenges the denial of his motion for rehearing concerning the fairness and accuracy of the title, ballot title and submission clause, and summary prepared by the Initiative Title Setting Review Board (Board),[1] regarding a proposed initiative to allow the sale of table wine in grocery stores.

In a separate original proceeding Bernie Jones (petitioner) and others, all qualified electors, also challenge the denial of their motion for rehearing contesting the fairness and accuracy of the title and the ballot title and submission clause regarding the same initiative. We have consolidated these proceedings for purposes of this opinion since the objections raised by the petitioners are substantially similar.

Both petitioners request this court to reverse the action of the Board and remand the title and the ballot title and submission clause to the Board with instructions to correct alleged errors. Peterson also requests that we remand the summary because it is not a clear and impartial state-

---

1. The members of the Initiative Title Setting Review Board are the secretary of state, the director of the legislative drafting office, and the attorney general. Section 1–40–101(2), C.R.S., 1973 (1980 Repl.Vol. 1B).

ment and does not reflect the fiscal impact on state and local government.[2] We affirm the Board's denial of both motions for rehearing.

At the outset we note that section 1–40–101(2), C.R.S.1973 (1980 Repl. Vol. 1B), mandates that the initiated measure's title must correctly and fairly express the true intent and meaning of the proposed measure, and the ballot title shall be brief, shall not conflict with other ballot titles, shall be in the form of a question, and shall unambiguously state the principle of the proposal. The summary must be clear, concise, and be a true and impartial statement as to the intent of the proposed law. The summary shall not be an argument, nor likely to create prejudice, for or against the measure. Further, if in the opinion of the Board the proposed law will have a fiscal impact on the state or any of its political subdivisions, the summary shall include an estimate of any such fiscal impact together with an explanation thereof. *See In Re Second Initiated Constitutional Amendment Respecting the Rights of the Public to Uninterrupted Service by Public Employees of 1980*, Colo., 613 P.2d 867 (1980).

The principles which guide us in our review of this case are well established:

"(1) [W]e must not in any way concern ourselves with the merit or lack of merit of the proposed [initiative] since, under our system of government, that resolution rests with the electorate; (2) all legitimate presumptions must be indulged in favor of the propriety of the board's action; and (3) only in a clear case should a title prepared by the board be held invalid."

*Bauch v. Anderson*, 178 Colo. 308, 310, 497 P.2d 698, 699 (1972). *See In re the Title, Ballot Title, Submission Clause and Summary Pertaining To the Branch Banking Initiative*, Colo., 612 P.2d 96 (1980); *In re the Proposed Initiative on Transfer of Real Estate*, Colo., 611 P.2d 981 (1980); *In re An Initiated Constitutional Amendment Respecting Rights of the Public to Uninter-*

*rupted Services by Public Employees*, 199 Colo. 409, 609 P.2d 631 (1980).

The proposed initiated law states:

"Be It Enacted by The People of the State of Colorado:

"SECTION 1. Part 1 of Article 47 of Title 12, Colorado Revised Statutes 1973, 1978 Repl. Vol., as amended, is amended BY THE ADDITION OF A NEW SECTION, to read:

"12–47–117.5 *Retail Grocery Store Wine License.*

"(1) Effective January 15, 1983, a person operating a retail grocery store may file verified applications, and after licensing by the state and local licensing authorities, may sell table wine in sealed containers not to be consumed at the place where sold. Such license shall be known as a 'retail grocery store wine license;' and, notwithstanding 12–47–112(1) and 12–47–135(1), may be issued by state and local licensing authorities. The person may own, either in whole or in part, or be directly or indirectly interested in, one or more retail grocery store wine licenses.

"(2) For purposes of this section:

"(a) 'Retail grocery store' means a premises intended for the sale of groceries at retail and which receives its annual gross income primarily from the retail sale of edible food products regularly sold for human consumption off the premises. For the sole purpose of determining whether this income requirement has been met, 'food' shall mean food as defined in 39–26–102(4.5). There shall be a rebuttable presumption that a premises is a retail grocery store if it receives over fifty percent of its annual gross income from such sales. It is the intent of this section to require a retail grocery store wine licensee to maintain a bona fide grocery store business, and not a mere pretext of such for obtaining a retail grocery store wine license.

---

2. The titles, submission clause, and summary fixed by the Board are set forth in Appendix A.

The proposed initiative is set forth in full later in this opinion.

"(b) 'Table wine' means all wine not exceeding fourteen percent of alcohol by volume.

"(3) It shall be unlawful for a retail grocery store wine licensee to have on the licensed premises any table wine container which shows evidence of having once been opened, or which contains a volume of table wine less than that specified on the label of such container.

"(4) No retail grocery store wine license shall be issued .for any building located within five hundred feet of any public or parochial school or the principal campus of any college, university, or seminary. Such distance shall be computed by direct measurement from the nearest property line of the land used for school purposes to the nearest portion of such building, using a route of direct pedestrian access.

"(5) A person under eighteen years of age who is under the supervision of a person on the premises over eighteen years of age may be employed in a retail grocery store, and during the normal course of such employment, handle and otherwise act with respect to table wine in the same manner as he may with fermented malt beverage under the Colorado Beer Code. This subsection shall not be construed to permit the violation of any provision of this article under circumstances not specified in this subsection.

"(6) Every person selling table wine as provided in this section shall purchase such table wine only from a wholesaler licensed pursuant to this article, and shall receive and store all shipments and deliveries of such table wine from a wholesaler only at the retail grocery store constituting the licensed premises from which such table wine will be sold.

"(7) The application fee for a retail grocery store wine license shall be as provided in 12–47–135(3). The annual state license fee for a retail grocery store wine license shall be the same as provided for by this article for a beer and wine license. The annual local license fee for a retail grocery store wine license shall be one hundred seventy-five dollars for premises located within, and two hundred seventy-five dollars for premises located outside, the municipal limits of any municipality or city and county.

"(8) A person holding a fermented malt beverage license for premises which is a retail grocery store may also hold a retail grocery store wine license for the same or different premises. A wholesaler licensed pursuant to this article may sell, deliver, or cause to be delivered table wine to such person.

"(9) Any person holding a fermented malt beverage license, on January 1, 1982, for a location which is a retail grocery store, and which license is in good standing, shall be entitled to obtain, in addition, a retail grocery store wine license for such location. Application shall be made in accordance with the provisions of this article, except that the application shall be subject to license renewal standards and procedures of this article rather than new license procedures of this article.

"(10) No application for a retail grocery store wine license shall be received or acted upon concerning a location for which any license application provided for in this article would not be accepted under 12–47–107(3) or 12–47–138(1)(a).

"(11) The provisions of 12–47–116(1) shall not apply to a retail grocery store wine license.

"(12) The provisions of 12–47–129(4)(a) shall not apply to any interest in a retail grocery store wine license with respect to any interest in any other retail grocery store wine license.

"(13) If any provision of this section or the application thereof to any person or circumstances is held invalid, such invalidity shall not affect other provisions or applications of the section which can be given effect without the invalid provision or application, and to this end the provisions of this section are declared to be severable.

"(14) The Revisor of Statutes, under the direction of the Committee On Legal Services, shall prepare and submit to that

Committee, for appropriate action as provided by law, such legislation as may be necessary to make changes in other statutes to conform to the intent of this section.

"(15) This section shall take effect January 15, 1983."

## I.

Both of the petitioners challenge the language of the title and the ballot title and submission clause, but for different reasons. Peterson contends that the phrase "[s]ubject to the same requirements of law concerning age of purchaser, and hours and days sold, as are applicable to other retailers of wine" is a "catch phrase" and is prejudicial and argumentative. The thrust of his argument is that, even though the Board's language is an accurate reflection of the effect of the initiative, the listing of two, but not other important effects of the proposal, particularly when those two are not a part of the text of the initiative, is improper.

■ Admittedly, the specific wording is not found in the text of the proposed statute. However, that does not preclude the Board from adopting language which explains to the signers of a petition and the voter how the initiative fits in the context of existing law. Article 47, Title 12, C.R.S. 1973 (1978 Repl.Vol. 5), deals with alcoholic beverages, and section 12–47–128(5) (1978 Repl.Vol. 5 & 1981 Supp.), sets out the minimum age of purchasers of alcoholic beverages and the hours and days when they may be sold.

Since the proposed initiative deals with the sale of an alcoholic beverage, we see nothing improper in the Board's providing information of a significant effect of existing law on the initiative.

■ Peterson also contends that the Board's failure to expand the title and the ballot title and submission clause to explain additional effects of the initiative, was prejudicial to the opponents of the initiative. This argument is based on an interpretation by the petitioner of the effect of the proposed statute on existing law. The Board, after careful consideration, decided to utilize the language now before this court. This language describes certain effects of the proposed law which the Board thought were of the utmost importance. There is no requirement that every possible effect be included within the title or the ballot title and submission clause. Such matters are capable of being brought to the attention of the voters by public debate. *See In re the Title, Ballot Title, Submission Clause and Summary Pertaining To the Branch Banking Initiative, supra.*

## II.

■ Jones contends that the phrase "after licensing" in the title and the ballot title and submission clause are ambiguous and misleading and fail to express the true intent and meaning of the initiative as to the licensing procedure to be followed. He argues that the objectionable phrase does not inform the petition signer or the voter that current holders of a 3.2 beer license may obtain a license for the sale of wine by application to local and state authorities, and such application is only subject to renewal procedures.

Jones requested the Board to eliminate the phrase "after licensing" or preferably to insert the following wording:

"EXCEPT THAT THOSE PERSONS HOLDING A LICENSE UNDER THE BEER CODE ON JANUARY 1, 1982, FOR A RETAIL GROCERY STORE WOULD BE ENTITLED TO A LICENSE UPON SATISFACTORY APPLICATION, SUBJECT TO THE LICENSE RENEWAL STANDARDS RATHER THAN NEW LICENSE PROCEDURES."

The language suggested by Jones is almost identical with that contained in the seventh paragraph of the summary. Our review of the record discloses that the Board gave careful consideration to the effect of the words "after licensing" and concluded that a more detailed discussion of the standards applicable to persons who al-

ready had a license under the Beer Code should be placed in the summary.[3]

The title and the ballot title and submission clause accurately reflect the true meaning and intent of the proposed law as derived from the language of that law. Being mindful of our duty to make all legitimate presumptions in favor of the Board's action, we conclude that the title and the ballot title and submission clause set by the Board should not be disturbed by this court.

### III.

Peterson next contends that the summary is not a true and impartial statement of the intent of the proposed law. He presents three bases for this contention: (1) the phrase "Existing standards concerning age of purchaser and hours and days sold" and the phrase "based on requirements of the neighborhood and desires of the inhabitants ..." in the second paragraph of the summary do not appear in the text of the proposed statute; (2) the summary fails to adequately disclose the difference between license renewal standards and procedures and new license procedures; and (3) the tone of the summary gives the impression that table wine is equated more with fermented malt beverage than with intoxicating liquor. We address the arguments seriatim.

■ The language used in the second paragraph of the summary does not appear verbatim in the initiative. It was developed by the Board as an explanation of how the initiative fits in the context of existing law. With reference to Peterson's objection concerning the language referring to the age of a purchaser and hours and days of sale, we have already discussed that issue in section I with respect to the title challenge, and our conclusion there is equally appropriate when applied to the summary.

■ As to the language referring to the requirements of the neighborhood and de-

sires of the inhabitants, we note that subsection (10) of the initiative incorporates the provisions of sections 12–47–107(3) and 138(1)(a), C.R.S.1973 (1978 Repl.Vol. 5). These sections establish the standard for accepting or acting upon an application for a license which has previously been denied within two years for the reason that the reasonable requirements of the neighborhood and desires of the inhabitants were satisfied by the existing outlets. Thus, the language adopted by the Board reflects the content of the initiative and provides a brief summary of the statutes which were incorporated by reference.

■ Next Peterson argues that the summary fails to adequately disclose the difference between license renewal standards and procedures and new license procedures. Subsection 9 of the initiative provides that persons holding a fermented malt beverage license for a location which is a retail grocery store would also be eligible to obtain a retail grocery store wine license and their application would be subject to license renewal standards and procedures rather than new license procedures. The Board, faced with Peterson's argument that the summary should include a detailed explanation of subsection 9, concluded that the difference between "renewal standards and procedures" and "new license procedures" was a matter for legal interpretation and debate and decided to use the language of subsection 9 in the summary.

The record supports the conclusion of the Board. Potential problems arising from the application of renewal or new license procedures were discussed, and the Board's decision to adopt language which parallels that of section 9 was appropriate. As we stated in *In re the Proposed Initiative on Transfer of Real Estate, supra,* Colo., 611 P.2d at 983, "[w]e can only consider whether the titles, summary, and submission clause reflect the intent of the [initiative], not whether they reflect all possible problems that may arise in the future in applying the language of the proposed [initiative]."

---

**3.** Jones concedes that the Board spent a substantial period of time analyzing the difference between licensing renewal standards and new

licensing procedures and adequately addressed this issue in a full paragraph in the summary.

■ Finally, Peterson's argument that the tone of the summary gives the impression that table wine is equated more with fermented malt beverage than with intoxicating liquor is based on the failure of the Board to state that (1) grocery store wine licenses would be regulated under the Colorado Liquor Code and (2) a person could have a fermented malt beverage license and a retail liquor license. As to his first point, we note that the initiative does not refer to the Colorado Liquor Code or to the term "liquor." Further, the Board, after hearing Peterson's argument, concluded that use of the word "liquor" was unfairly prejudicial and might lead people to believe that the initiative dealt with something other than table wine. Keeping in mind our duty to make all legitimate presumptions in favor of the Board's action, we believe that the decision of the Board should not be disturbed by our court.

■ As to Peterson's second point, little need be said. The initiative would create a new license entitled "retail grocery store wine license," a different license from a retail liquor license. *See* section 12–47–116, C.R.S.1973 (1978 Repl.Vol. 8 & 1981 Supp.). Under the initiative, it would be possible for a person to have a fermented malt beverage license and a retail grocery store wine license, not a fermented malt beverage license and a retail liquor license.

### IV.

■ Peterson next contends that the Board failed in its duty to obtain sufficient evidence to prepare an adequate fiscal impact statement and the fiscal impact statement approved by the Board is not true and impartial.

The Board is charged with the duty of including in the summary an estimate of the fiscal impact, if any, of a proposed law on the state or any of its political subdivisions. *See* section 1–40–101(2), C.R.S.1973 (1980 Repl.Vol. 1B). After hearing substantial testimony concerning the fiscal impact of the initiative on both state and local governments, the Board concluded that state revenues would exceed state adminis-

trative costs, but no determination could be made of the fiscal impact on local governments because of the variables involved.

The Board's conclusion as to the fiscal impact on both state and local government is supported by the record. The Board requested and obtained information from the Office of State Planning and Budgeting and also heard the testimony of the Chief of the State Liquor Enforcement Division. Although the Board was not entirely satisfied with the sufficiency of the information provided to it, they were of the opinion that no additional information would be available which would permit them to make a more definitive statement concerning the fiscal impact on local governments.

Under these circumstances, we believe that the Board properly exercised its judgment in concluding that the fiscal impact upon local government could not be determined because of the variables involved. *See In re An Initiated Constitutional Amendment Respecting Rights of the Public to Uninterrupted Services by Public Employees, supra.*

Accordingly, we affirm the ruling of the Initiative Title Setting Review Board.

### APPENDIX A

#### 82SA210 and 82SA211

#### "PROPOSED INITIATIVE TO PERMIT THE SALE OF TABLE WINE BY RETAIL GROCERY STORES

"The title as designated and fixed by the Board is as follows:

"AN ACT PERMITTING GROCERY STORES, AFTER LICENSING, TO SELL WINE CONTAINING NOT MORE THAN FOURTEEN PERCENT OF ALCOHOL BY VOLUME IN SEALED CONTAINERS NOT TO BE CONSUMED ON THE PREMISES, SUBJECT TO THE SAME REQUIREMENTS OF LAW CONCERNING AGE OF PURCHASER, AND HOURS AND DAYS SOLD, AS ARE APPLICABLE TO OTHER RETAILERS OF WINE IN SEALED CONTAINERS.

924

"The ballot title and submission clause as designated and fixed by the Board is as follows:

"SHALL GROCERY STORES, AFTER LICENSING, BE PERMITTED TO SELL WINE CONTAINING NOT MORE THAN FOURTEEN PERCENT OF ALCOHOL BY VOLUME IN SEALED CONTAINERS NOT TO BE CONSUMED ON THE PREMISES, SUBJECT TO THE SAME REQUIREMENTS OF LAW CONCERNING AGE OF PURCHASER, AND HOURS AND DAYS SOLD, AS ARE APPLICABLE TO OTHER RETAILERS OF WINE IN SEALED CONTAINERS?

"The summary prepared by the Board is as follows:

"The proposed law would provide that, effective January 15, 1983, a person operating a retail grocery store which receives its annual gross income primarily from the retail sale of food for human consumption off the premises may sell 'table wine' upon being licensed to do so. 'Table wine' means all wine not exceeding fourteen percent of alcohol by volume. The wine would be required to be in sealed containers and consumed off the store premises. A person could own one or more retail grocery store wine licenses. Criteria are provided for determining which retail grocery stores would qualify for such licenses.

"Existing standards concerning age of purchaser and hours and days sold, and prohibiting reapplication for a license within two years of denial of any license based on requirements of the neighborhood and desires of the inhabitants would be the same for retail grocery store wine licenses as for other retailers of wine in sealed containers.

"The proposed law would permit a person holding a 3.2% beer license for premises which is a retail grocery store to also hold a retail grocery store wine license for the same or different premises.

"No retail grocery store wine license would be issued for any building within five hundred feet of the property line of any school.

"Employees of the licensee under eighteen years of age and supervised by a person over eighteen would be permitted to handle table wine in the normal course of employment in the same manner as they may handle 3.2% beer under the Beer Code.

"Licensees could buy table wine only from licensed wholesalers and receive and store the wine only at the licensed grocery store.

"Any person holding a license under the Beer Code on January 1, 1982, for a retail grocery store, which license is in good standing, would be entitled to a retail grocery store wine license for such store upon satisfactory application. Such application would be subject to license renewal standards and procedures rather than new license procedures under present law regarding licenses to sell wine.

"The proposed law would take effect January 15, 1983.

"It is estimated that increases in state revenues resulting from the proposed law would exceed costs of administration by state government. The fiscal impact upon local government cannot be determined because of the variables involved.

"March 24, 1982"

