### In re PROPOSED INITIATIVE CONCERNING DRINKING AGE IN COLORADO.

**Robert B. Keating, Opponent,**

and

**Coalition for Raising Drinking Age, Beverly J. Kinard, Marian L. York, Charles W. Mobley, Patricia D. Mobley, David M. Kinard, Proponents,**

and

**Natalie Meyer, Douglas G. Brown and Duane Woodard, Statutory Board.**

**No. 84SA281.**

Supreme Court of Colorado,
En Banc.

July 5, 1984.

**1128**

Robert B. Keating, pro se.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Maurice G. Knaizer, Asst. Atty. Gen., Denver, for Title Setting Board.

LOHR, Justice.

This is an original proceeding under section 1–40–102(3), 1B C.R.S. (1980), in which we must review the titles and submission clause approved by the Initiative Title Setting Review Board (Board) for a proposed initiated law concerning the dispensing and possession of fermented malt beverages. We conclude that the titles and submission clause express the true meaning and intent of the proposed law with sufficient clarity. Therefore, we affirm the action of the Board.

I.

The proposed initiated law would amend section 12–46–112 of the Colorado Beer Code, sections 12–46–101 to –118, 5 C.R.S. (1978 & 1983 Supp.), to raise the fermented malt beverage[1] drinking age from eighteen

---

1. "Fermented malt beverage" is defined in the Colorado Beer Code as follows:

"Fermented malt beverage" means any beverage obtained by the fermentation of any infu-

to twenty-one and to change the prohibited times of sale of that beverage from the hours between 12:00 midnight and 5:00 A.M. to the period 2:00 A.M. to 7:00 A.M. The measure would accomplish these objectives by substitution of the new age limit and hours in the existing provisions of the Colorado Beer Code. The proposed new law is set forth in full text in Appendix A to this opinion.

Pursuant to section 1–40–101(2), 1B C.R.S. (1980), the Board designated and fixed the following title for the proposed measure:

AN ACT TO PROHIBIT THE SELLING, SERVING, OR GIVING OF FERMENTED MALT BEVERAGES TO PERSONS UNDER TWENTY-ONE YEARS OF AGE AS OF JULY 1, 1985, EXCEPT TO PERSONS REACHING EIGHTEEN YEARS OF AGE BEFORE SUCH DATE.

The Board also designated and fixed a ballot title and submission clause as follows:

SHALL THERE BE AN ACT TO PROHIBIT THE SELLING, SERVING, OR GIVING OF FERMENTED MALT BEVERAGES TO PERSON [SIC] UNDER TWENTY-ONE YEARS OF AGE AS OF JULY 1, 1985, EXCEPT TO PERSONS REACHING EIGHTEEN YEARS OF AGE BEFORE SUCH DATE?

Finally, the Board prepared the following summary of the proposed law:

The act would prohibit the selling, serving, or giving of fermented malt beverages to persons under twenty-one years of age, as well as the purchase or public possession of such beverages by those under twenty-one.

The measure would forbid any sale of fermented malt beverages between the hours of 2:00 A.M. and 7:00 A.M.

The act would take affect [sic] July 1, 1985. It would not prohibit the consumption of fermented malt beverages by persons who turned eighteen before that date.

The measure would result in a reduction in the sales of fermented malt beverages and a related reduction in state and local government revenues. The extent to which revenue reductions would be offset by reductions in alcohol-related [sic] social costs is indeterminable.

Thereafter, under the authority of section 1–40–102(3), 1B C.R.S. (1980), Robert B. Keating (petitioner), a qualified elector, filed a motion with the Secretary of State for a rehearing, challenging the title, the ballot title, and submission clause on the basis that they "do not fairly or clearly express the true meaning and intent of the proposed law." The petitioner did not object to the summary. The Board held a hearing to consider the motion and denied it. The petitioner then sought relief in this court under the procedures prescribed in section 1–40–102(3), 1B C.R.S. (1980).

The petitioner challenges the titles and submission clause on three bases. First, he alleges that the titles and submission clause are deficient because they fail to mention that the proposed statute would forbid persons under twenty-one years of age from possessing fermented malt beverages in any store, public place, state property, or motor vehicle on a public way. Second, he contends that it is inaccurate to describe the proposed act's provision that persons who are eighteen years of age and older prior to July 1, 1985, may continue to "consume fermented malt beverages" as an exception to the prohibition of selling, serving, or giving of fermented malt beverages to that group. Finally, the petitioner objects to the absence of any reference to the change in the hours during which the sale of fermented malt beverages is prohibited.

## II.

A summary of the relevant procedures, duties of the Board, and standards to be applied by this court in reviewing the

---

sion or decoction of barley, malt, hops, or any similar product or any combination thereof in water containing not less than one-half of one percent and not more than three and two-tenths percent alcohol by weight.
§ 12–46–103(1), 5 C.R.S. (1983 Supp.).

Board's actions will provide a useful background against which to consider the petitioner's specific objections.

■ The right of the People to initiate laws is rooted in Article V, section 1 of the Colorado Constitution. The Board was created by statute to assist in the implementation of this right. *See* § 1–40–101(2), 1B C.R.S. (1980). The Board is required "to designate and fix a proper fair title for each ... proposed law ...," one "which shall correctly and fairly express the true intent and meaning thereof." *Id.* The Board must also fix a ballot title and submission clause. *Id.* Ballot titles "shall be brief" and "shall unambiguously state the principle of the provision sought to be added, amended, or repealed." *Id.*

· After the Board has designated the titles and submission clause, and has prepared the summary, any qualified elector who is not satisfied with the Board's products and is not among the persons submitting the initiative petition may move the Board for a rehearing. § 1–40–102(3), 1B C.R.S. (1980). If unsuccessful, the elector may obtain review of the Board's action by this court. *Id.*[2] Grounds for challenge are that "the titles, summary, and submission clause ... [are] unfair or that they do not clearly express the true meaning and intent of the proposed law...." *Id.*

■ Where, as here, a petitioner seeks review by this court after denial of relief by the Board, we must apply the following standards:

(1) [W]e must not in any way concern ourselves with the merit or lack of merit of the proposed amendment since, under our system of government, that resolution rests with the electorate; (2) all legitimate presumptions must be indulged in favor of the propriety of the board's action; and (3) only in a clear case should a title prepared by the board be held invalid.

*Bauch v. Anderson*, 178 Colo. 308, 310, 497 P.2d 698, 699 (1972). These standards have been reaffirmed and applied in a number of later cases. *E.g., In re: Proposed Initiated Constitutional Amendment of Education, 1984*, 682 P.2d 480, 482 (Colo.1984) (hereafter cited as *1984 Education Amendment*); *In re: An Initiated Constitutional Amendment Respecting Rights of the Public to Uninterrupted Services by Public Employees*, 199 Colo. 409, 410, 609 P.2d 631, 632 (1980). Our role is to determine whether the titles, submission clause and summary fairly reflect the purport of the proposed amendment. *1984 Education Amendment*, at 482. This is important so that neither the signers of initiative petitions nor the electors voting on an initiated measure will be misled. *See* §§ 1–40–107 and 108, 1B C.R.S. (1980 & 1983 Supp.); *1984 Education Amendment*, at 482.

### III.

#### A.

It is clear from a reading of the proposed initiated law that its central purpose is to raise the drinking age for fermented malt beverages from eighteen to twenty-one. The act would accomplish this purpose by striking the word "eighteen" wherever it appears in section 12–46–112 of the Colorado Beer Code and substituting the words "twenty-one." The only other revisions the measure would effect would be to change the early morning hours during which the sale of fermented malt beverages is prohibited and to substitute "fermented malt beverages" for "3.2 beer" in the warning to be displayed on premises licensed for retail sale. This latter change is not involved in the challenges to the titles and submission clause. In addition, the proposed law provides a transition period, permitting persons who are eighteen prior to July 1, 1985, the act's effective date, to continue to consume fermented malt beverages.

Section 12–46–112 contains a myriad of prohibitions which could not be detailed in the titles and submission clause consistent with the statutory mandate of brevity. *See*

---

**2.** Separate provisions are made for rehearing and appeal at the instance of persons who presented the initiative petition. § 1–40–101(3), 1B C.R.S. (1980).

§ 1–40–101(2), 1B C.R.S. (1980). The Board has chosen to capture the central effect of the changes by stating that they would "prohibit the selling, serving, or giving of fermented malt beverages to persons under twenty-one years of age...."

### B.

■ The petitioner's first objection is that the titles do not fairly reflect the content of the proposed amendment because they omit to mention that the act would prohibit persons under twenty-one from possessing fermented malt beverages in any store, public place, state property, or motor vehicle on a public way. He asserts that the absence of information about these prohibitions on possession, when taken together with the specific reference to forbidden acts of dispensing fermented malt beverages, renders the titles fatally misleading. We disagree. The identification of classes of persons who might violate the act, and the exact nature of the activities proscribed are only incidental to the main theme: fermented malt beverages are not to be made available to persons under twenty-one. The language of the titles communicates precisely that. It is not necessary that every effect of a proposed initiated law be described in the titles. *In re Title, Ballot Title and Submission Clause, and Summary Pertaining to the Casino Gaming Initiative Adopted on April 21, 1982,* 649 P.2d 303 (Colo.1982) (hereafter cited as *Casino Gaming*); *In re Title, Ballot Title and Submission Clause, and Summary Pertaining to the Sale of Table Wine in Grocery Stores Initiative Adopted on March 24, 1982,* 646 P.2d 916 (Colo.1982) (hereafter cited as *Table Wine in Grocery Stores*).

### C.

The petitioner also asserts that the consumption exception is improperly summarized in the titles and that the action of the Board must be reversed as a result. We disagree. The act would become effective July 1, 1985, with the following exception: "however, persons who are eighteen years of age and older prior to July 1, 1985, may *continue to consume* fermented malt beverages." (Emphasis added.) The effect of this exception is limited in time. Three years from the effective date of the act it will have no further relevance.

■ The titles indicate that the consumption exception extends to the prohibition against the selling, serving, or giving of fermented malt beverages, while the petitioner asserts that it must be narrowly and literally read to protect only the drinking of the beverages. We have held that neither the Board nor the court should engage in statutory construction in the course of setting or reviewing titles, submission clauses, and summaries. *Casino Gaming; In re Title, Ballot Title and Submission Clause, and Summary Including the Estimate of Fiscal Impact and Explanation Thereof Pertaining to the Mineral Production Tax Initiative Adopted on January 27, 1982,* 644 P.2d 20 (Colo.1982) (hereafter cited as *Mineral Production Tax*). It is necessary, however, to summarize proposed initiated laws in order to achieve brevity in the titles. *See* § 1–40–101(2), 1B C.R.S. (1980). Anything less than a recital of the full text of such a law involves a choice of words that frequently suggests the meaning to be given to the more expansive language of the initiated measure itself.

■ The language adopted by the Board to summarize the consumption exception suggests a scope for that exception which is expansive, but not unreasonable. Under the circumstances here, where the wording of the titles attributes a meaning to the text that is reasonable, although not free from all doubt, and relates to a feature of the proposed law that is both peripheral to its central purpose and of limited temporal relevance, we conclude that no clear case has been presented for invalidation of the titles fixed by the Board. *See, e.g., Bauch v. Anderson,* 178 Colo. 308, 497 P.2d 698 (1972).

### D.

▆ Finally, the petitioner claims that the titles do not fairly represent the content of the measure because they make no mention of the change of prohibited times of sale from the hours between 12:00 midnight and 5:00 A.M. to the period 2:00 A.M. to 7:00 A.M. We disagree. Ballot titles are required to be brief. § 1–40–101(2). Not every possible effect of the legislation must be included in the titles. *Casino Gaming*, 649 P.2d at 310; *Table Wine in Grocery Stores*, 646 P.2d at 921. The duration of the closure period would remain the same under the proposed law as under the present statute; the period is simply shifted forward by two hours. The Board might well have viewed this change as only incidental to the act's central purpose of increasing the drinking age. *See Table Wine in Grocery Stores*, 646 P.2d at 921 (titles properly limited to effects that the Board considered of utmost importance). Indulging all legitimate presumptions in favor of the propriety of the Board's action, as we must, and adhering to the principle that only in a clear case should a title prepared by the Board be declared invalid, we hold that the omission of the change in sale hours is a decision properly within the discretion of the Board and is one to which we must defer.

### E.

▆ In evaluating the petitioner's objections, we are mindful that the Board's actions must be presumed to be proper so that the orderly progress of the initiative process is not impeded for other than substantial reasons. This protects the "strong constitutional interest in the People's right to initiate constitutional amendments." *Casino Gaming*, 649 P.2d at 308; *accord, Say v. Baker*, 137 Colo. 155, 322 P.2d 317 (1958). "It is not the function of this court to rephrase the language of the summary and title in order to achieve the best possible statement of the intent of the [proposed initiated law]." *Mineral Production Tax*, 644 P.2d at 25; *accord, Say v. Baker*.

▆ We hold that the titles and submission clause, while perhaps not models for future draftsmanship, are adequate to meet the statutory requirements of fairness and clear expression of the true meaning and intent of the proposed law.

We affirm the ruling of the Initiative Title Setting Review Board denying the petitioner's motion for rehearing.

KIRSHBAUM, J., dissents and NEIGHBORS, J., joins in the dissent.

### APPENDIX A

### A BILL FOR AN ACT

#### Bill Summary

BE IT ENACTED BY THE PEOPLE OF THE STATE OF COLORADO:

SECTION 1. 12–46–112(1)(a), (1)(b), (1)(c), (1)(d), (1)(e), and (2)(b), Colorado Revised Statutes, 1978 Repl.Vol., are amended to read:

12–46–112. *Unlawful acts.* (1)(a) To sell fermented malt beverages to any person under the age of ~~eighteen~~ TWENTY-ONE years or to any person between the hours of ~~12 midnight and 5 a.m.;~~ 2:00 A.M. and 7:00 A.M.;

(b) To sell, serve, give away, dispose of, exchange, or deliver, or to permit the sale, serving, giving, or procuring of any fermented malt beverage, as defined by section 12–46–103(1), to or for any person under the age of ~~eighteen~~ TWENTY-ONE years, to a visibly intoxicated person, or to a known habitual drunkard. If a person who, in fact, is not ~~eighteen~~ TWENTY-ONE years of age exhibits a fraudulent proof of age, any action relying on such fraudulent proof of age shall not constitute grounds for the revocation or suspension of any license issued pursuant to the provisions of this article.

(c) To obtain any fermented malt beverage by misrepresentation of age or by any other method in any place where fermented malt beverages are sold if such person is under ~~eighteen~~ TWENTY-ONE years of age;

(d) To have in his possession fermented malt beverages in any store, in any public place including public streets, alleys, roads, or highways, or upon property owned by the state of Colorado or any subdivision thereof, or inside vehicles while upon the public streets, alleys, roads, or highways if such person is under ~~eighteen~~ TWENTY-ONE years of age;

(e) To suffer or permit any person under ~~eighteen~~ TWENTY-ONE years of age of whom he may be a parent or guardian to violate the provisions of paragraph (a) or (b) of this subsection (1) if said parent or guardian knows or reasonably should know of such violation.

(2)(b) To fail to display at all times in a prominent place on premises licensed for retail sale a printed card with a minimum height of fourteen inches and a width of eleven inches with each letter to be a minimum of one-half inch in height which shall read as follows:

### WARNING

IT IS ILLEGAL TO SELL ~~3.2 BEER~~ ANY FERMENTED MALT BEVERAGE TO ANY PERSON UNDER ~~EIGHTEEN~~ TWENTY-ONE YEARS OF AGE, OR FOR ANY PERSON UNDER ~~EIGHTEEN~~ TWENTY-ONE YEARS OF AGE TO POSSESS OR TO ATTEMPT TO PURCHASE THE SAME.

IT IS ILLEGAL IF YOU ARE OVER ~~EIGHTEEN~~ TWENTY-ONE YEARS OF AGE FOR YOU TO PURCHASE ~~3.2 BEER~~ ANY FERMENTED MALT BEVERAGE FOR A PERSON UNDER ~~EIGHTEEN~~ TWENTY-ONE YEARS OF AGE.

FINES AND IMPRISONMENT MAY BE IMPOSED BY THE COURTS FOR VIOLATION OF THESE PROVISIONS.
SECTION 2. EFFECTIVE DATE—APPLICABILITY. THIS ACT SHALL TAKE EFFECT JULY 1, 1985, AND SHALL APPLY TO ACTS COMMITTED ON OR AFTER SAID DATE; HOWEVER, PERSONS WHO ARE EIGHTEEN YEARS OF AGE AND OLDER PRIOR TO JULY 1, 1985, MAY CONTINUE TO CONSUME FERMENTED MALT BEVERAGES.

KIRSHBAUM, Justice, dissenting:

I respectfully dissent from the rationale and conclusion expressed by the majority in Section II(c) of its opinion.

Section 1–40–101(2), 1B C.R.S. (1980), prescribes the statutory duty of the board as follows:

> [To] prepare a clear, concise summary of the proposed law or constitutional amendment. The summary shall be a true and impartial statement as to the intent of the proposed law or constitutional amendment and shall not be an argument, nor likely to create prejudice, either for or against the measure.

The statute and its predecessors have long served as the benchmark for this court's review of the board's deliberations. In construing this statutory provision, this court, prior to today, has consistently ruled that in summarizing an initiated statute or constitutional amendment neither the board nor the court has authority to interpret, construe or otherwise evaluate the meaning or effect of such proposal. *Cf. In re Title, Ballot Title & Submission Clause, & Summary Pertaining to Casino Gaming*, 649 P.2d 303, 310 (Colo.1982) ("[I]t is not our function in this review proceeding, nor is it the Board's function, to determine the meaning of the language of the initiative; a judicial interpretation of the meaning of the initiative must await an adjudication in a specific factual context."); *In re Title, Ballot Title & Submission Clause, & Summary Including the Estimate of Fiscal Impact & Explanation Thereof Pertaining to the Mineral Production Tax Initiative*, 644 P.2d 20, 23 (Colo.1982) ("Since the duty of the board is to impartially summarize the stated intent of the amendment, but not to argue for a certain interpretation, it would be inappropriate to interpret the language of the proposed amendment.... Furthermore, it is not our function in this review proceeding to determine the meaning of the language of the amendment; rather, a judicial interpretation must await an adjudication in a contro-

versy arising in a specific factual context."); *In ·re Proposed Initiative on Transfer of Real Estate,* 200 Colo. 40, 43, 611 P.2d 981, 983 (1980) ("If a controversy arises in a specific factual context, then judicial determination ... may be appropriate, but it is not relevant to the determination of accuracy of the language of the titles, summary, and submission clause."); *Bauch v. Anderson,* 178 Colo. 308, 310, 497 P.2d 698, 699 (1972) ("[W]e must not in any way concern ourselves with the merit or lack of merit of the proposed amendment since, under our system of government, that resolution rests with the electorate...."). The majority today replaces this clear limitation upon the authority of the board and this court with a more elastic and, therefore, far less certain standard. I find the prior test to be the better reasoned rule. Applying it here, I conclude that the titles and submission clause drafted by the board impermissibly interpret section two of the proposed initiative.

It is helpful to recall that voters place primary, if not absolute, reliance upon the board's product when deciding whether to support or oppose proposed initiatives. It is for this reason that our decisions have insisted that those documents be neutral, unambiguous, non-argumentative and non-interpretive in summarizing the contents of various proposals. Certainly the board, by conscious effort or through carelessness, on occasion might adopt words and phrases which persuade rather than describe. Recognizing the profound influence such language could have on voters, this court has steadfastly prohibited the use of "catch phrases" when words chosen by the board in drafting titles have suggested particular meanings of a proposal rather than merely summarizing its contents. *See, e.g., Say v. Baker,* 137 Colo. 155, 322 P.2d 317 (1958).

The majority's suggestion that summarization necessarily requires interpretation severely overstates the problem. It is just because summarization can, with care, avoid debatable interpretations that this court has insisted that the board exercise its drafting authority with extreme caution. To elevate the acceptable premise that our elusive language sometimes refuses to permit pure summarization to the dubious proposition that the board cannot avoid interpretation is equally unwarranted. The only effective safeguard against either argumentative or misleading interpretive nuances of phraseology that in reality describe a particular result of a proposal rather than the proposal itself is to prohibit absolutely the use of words which demonstrably interpret or construe proposed initiatives. To date, the board has exhibited admirable skill in performing its statutory duties under this restrictive standard, to the benefit of all voters. I would retain this standard.

The majority accords the board expanded authority to construe the effects of proposals so long as the interpretive language is "not unreasonable" and "relates to a feature of the proposed law that is both peripheral to its central purpose and of limited temporal relevance." Far from furthering the salutary goal of establishing uniform neutral standards of review of board action, such test greatly reduces the possibility of achieving such objective criteria. It must first be noted that the majority provides no guidance for a determination of what is "not unreasonable." It is highly unlikely that reasonableness doctrines developed in the common law of negligence will provide a basis for the articulation of this standard. There is no comparable body with which to contrast the conduct of the title review board. Moreover, since a "reasonable" interpretation certainly need not be a "correct" one, the new test for evaluating board action relies upon the particular impressions of a particular majority of this court, formulated without benefit of a factual context, concerning what a reasonable, though perhaps wrong, construction might be.

Compounding the problem of developing objective criteria for review of board action is the proposition that certain provisions of an initiative may be interpreted or construed by the board if such provisions are "peripheral" to the proposal's "central purpose" *and* are "of limited temporal rele-

vance." These assertions create new difficulties for the board. In the past, the requirement of brevity has been sufficient to justify the board's decision to exclude discussion of many provisions of particular proposed initiatives. Now, however, the board is permitted, if not encouraged, to interpret provisions which this court deems marginal. The once clear mandate to achieve brevity has now been muddled. Furthermore, it is difficult to understand how considerations of temporal relativity can lead to development of meaningful standards by which the board may gauge its performance. Are all proposed provisions which expire in thirty-six months or less presumptively of sufficient brevity to be subject to interpretation? The period of time a proposed provision might be effective seems a most ephemeral standard by which particular phraseology is to be measured. In this very case, for example, it certainly is not self-evident that the provision permitting those possibly quite numerous Coloradoans who are at least eighteen years old on July 1, 1985, to continue to consume fermented malt beverages is either peripheral or of sufficiently limited temporality to permit interpretive treatment by the board.

The prior standard has proved to be a relatively clear beacon for the board's guidance. The new standard is dim and diffuse, complicates the board's already difficult task, and, in my opinion, can only lead the board and this court astray from the path of neutrality which heretofore has led to faithful summarization of proposed initiatives.

Application of the prior rule to this case leads inescapably to the conclusion that the titles and submission clause prepared by the board impermissibly express an interpretation of certain language of the proposal. For that reason, the board's action should be reversed.

The proposal, as set forth in full in Appendix A, contains amendments to sections 12–46–112(1)(a) to –(1)(e), 5 C.R.S. (1978), and to section 12–46–112(2)(b), 5 C.R.S. (1978). The amendments to section 112(1) substitute the number "twenty-one" for the number "eighteen" and, with respect to section 112(1)(a), substitute the phrase "2:00 A.M. and 7:00 A.M." for the phrase "12 midnight and 5 a.m." The substantive provisions of section 112(1) in general declare numerous acts by various described classes of persons to be unlawful. Sections 1(a) and 1(b) discuss selling; serving; giving away; disposing of; exchanging; delivering; and permitting the sale, serving, giving or procurring of fermented malt beverages. Sections 1(c) and 1(d) discuss obtaining or possessing fermented malt beverages. Section 1(e) discusses suffering or permitting certain persons to violate sections 1(a) or 1(b). The proposed initiative does not contain substitute language for these general substantive provisions.

The proposal does contain the following language, however:

Section 2. Effective Date—Applicability. This act shall take effect July 1, 1985, and shall apply to acts committed on or after said date; *however, persons who are eighteen years of age and older prior to July 1, 1985, may continue to consume fermented malt beverages.* (emphasis added).

The titles and submission clause prepared by the board state unequivocally that this exception applies to acts of selling, serving or giving of fermented malt beverages. The exception certainly does not expressly relate to such acts. Depending upon a given fact context, such acts may or may not be deemed prohibited when connected with persons who "consume" beverages. The board has assumed a possible effect of this portion of the proposal and has translated that assumption into an absolute statement of fact. In so doing, the board has construed the meaning and effect of this part of the proposal, rather than—as it admirably did in its summary of the initiative—simply describe the proposal's contents.

The point is not whether this interpretation of the proposal is accurate or reasonable. The principle is that any construction or interpretation of the initiative by the

board is impermissible. *In re Title, Ballot Title & Submission Clause, & Summary Pertaining to Casino Gaming*, 649 P.2d 303 (Colo.1982); *In re Title, Ballot Title & Submission Clause, & Summary Including the Estimate of Fiscal Impact & Explanation Thereof Pertaining to the Mineral Production Tax Initiative*, 644 P.2d 20 (Colo.1982); *Bauch v. Anderson*, 178 Colo. 308, 497 P.2d 698 (1972). The policy is that the voters, in considering whether to support or oppose this initiative, should not be informed to any extent by the documents prepared by the title board what one possible effect of the proposal might be. Any interpretation of the effect of the proposal with regard to the present statute must await the presentation of particularized alternatives addressed by adverse parties in a specific factual context—in short, an adjudicative proceeding.

In view of the requirement of brevity emphasized by the General Assembly in describing the functions of the board, *see* section 1–40–101(2), 1B C.R.S. (1980), it would be well within the board's discretion to omit from the titles and submission clause any reference to the "consumption" exception contained in section 2 of the proposal. In the event the board elected to treat such exception in the titles and submission clause, language similar to the description contained in the summary would avoid the problems of interpretation and construction which beset the phraseology actually used in the former documents. The present titles and submission clause improperly construe the meaning and effect of a portion of the proposal; for that reason, I would reverse the board's action and remand the matter with instructions.

I am authorized to say that NEIGHBORS, J., joins me in the dissent.