In the Matter of the Title, Ballot Title and Submission Clause, and Summary, including the Estimate of Fiscal Impact and Explanation thereof, pertaining to the INCREASE OF TAXES ON TOBACCO PRODUCTS INITIATIVE ADOPTED ON MARCH 2, 1988.

**James H. Beimford,
Opponent–Petitioner,**

and

**Robert W. Schrier, M.D.,
Proponent–Respondent,**

and

**Natalie Meyer, Douglas G. Brown and Duane Woodard, Initiative Title Setting Review Board–Respondent.**

No. 88SA115.

Supreme Court of Colorado,
En Banc.

June 6, 1988.

Rehearing Denied July 5, 1988.

---

Hays and Wilson, Frank L. Hays, James C. Wilson, Jr., Denver, for opponent-petitioner.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Neil Tillquist, Asst. Atty. Gen., Denver, for Initiative Title Setting Review Bd.-respondent.

QUINN, Chief Justice.

This is a statutory proceeding initiated by James H. Beimford, a registered elector of the state of Colorado, who challenges the fairness and accuracy of the summary and fiscal impact statement prepared by the Initiative Title Setting Review Board with respect to a proposed initiative to amend sections 39–22–623, 39–28–103, and 39–28–110, 16B C.R.S. (1982 & 1987 Supp.), for the purpose of increasing taxes on tobacco products. We affirm the action of the Initiative Title Setting Review Board.

## I.

The statutory scheme for reviewing the title, summary, and submission clause of an initiated measure for a proposed law or constitutional amendment provides the framework for our analysis of the issues raised here. We briefly review that statutory scheme and then summarize the facts pertinent to this case.

## A.

The Colorado Constitution reserves to the people the power to propose a law or constitutional amendment through an initiated measure. Colo. Const. art. V, § 1. The Initiative Title Setting Review Board (Board), which consists of the Secretary of State, the Attorney General, and the Director of the Legislative Drafting office, § 1–40–101(2), 1B C.R.S. (1980), was created to assist in the people's exercise of this initiative power. *In re Proposed Initiative Concerning Drinking Age in Colorado*, 691 P.2d 1127, 1130 (Colo.1984). Before a proposed law or constitutional

amendment may be submitted to the voters for their approval or rejection, the Board is required to fix a title for the proposed measure, a ballot title and submission clause, and a summary. § 1–40–101(2), 1B C.R.S. (1980). The title for the proposed measure must "correctly and fairly express the true intent and meaning" of the proposed legislation. *Id.* Ballot titles must be brief, must be "in the form of a question which may be answered 'yes' or 'no,'" and must "unambiguously state the principle of the provision sought to be added, amended, or repealed." *Id.* The statutory scheme also requires that the summary be clear and concise, and that it "be a true and impartial statement as to the intent of the proposed law or constitutional amendment and ... not be an argument, nor likely to create prejudice, either for or against the measure." *Id.* If the Board believes that the proposed measure would have a fiscal impact on the state or any of its political subdivisions, the summary must include an estimate and explanation of the expected fiscal impact. *Id.* Section 1–40–102(3), 1B C.R.S. (1987 Supp.), permits any registered elector to file a motion with the Secretary of State for a rehearing on the basis that the title, summary, and submission clause fixed by the Board are unfair or do not "express the true meaning and intent of the proposed law." If the motion is denied, the elector may file a petition with this court seeking review of the Board's action. *Id.*

### B.

In this case, the proposed law, which is set forth in an Appendix to this opinion, imposes an additional ten-mill tax on cigarettes and a twenty-eight cents tax per ounce on all other tobacco products. An amount equal to ninety-five percent of the revenues generated by the taxes is to be used as funding for programs to provide health care for the medically indigent, and the remaining five percent is to be placed in a special fund to provide support for prevention, education, and research programs for various smoking-related diseases.

The Board fixed the following title for the proposed measure:

AN ACT TO INCREASE TAXES ON TOBACCO PRODUCTS AND TO DISTRIBUTE REVENUES FROM THE INCREASE TO HEALTH CARE FOR THE MEDICALLY INDIGENT AND PROGRAMS FOR SMOKING–RELATED DISEASES.

The ballot title and submission clause fixed by the Board was as follows:

SHALL THERE BE AN ACT TO INCREASE TAXES ON TOBACCO PRODUCTS AND TO DISTRIBUTE REVENUES FROM THE INCREASE TO HEALTH CARE FOR THE MEDICALLY INDIGENT AND PROGRAMS FOR SMOKING–RELATED DISEASES?

The summary prepared by the Board states:

This measure places an additional ten-mill tax on cigarettes and twenty-eight cents per ounce tax on all other tobacco products. Ninety-five percent of the revenue attributable to these additional taxes is to be used as funding for programs to provide health care for the medically indigent, and five percent is to be credited to a fund for support of prevention, education, and research programs in smoking-related diseases of heart, lung and cancer. A special commission to administer the fund shall be appointed by the governor.

The measure exempts the revenues generated by the additional taxes from the percentage of gross state cigarette taxes paid to counties and municipalities unless there is a decrease in the revenues apportioned to such local governments from the amount apportioned in the 1987–1988 state fiscal year.

The fiscal impact of this measure would be to raise state taxes on tobacco products in an amount estimated to be between $55,000,000 and $65,000,000 in the 1988–1989 state fiscal year.

After the Board fixed the title, ballot title and submission clause, and summary, Beimford filed a timely motion with the Secretary of State for a rehearing pursuant to section 1–40–102(3), 1B C.R.S. (1987

Supp.). The Board met and received comments from Beimford's attorney, and then denied the motion. Beimford thereafter filed an action in this court seeking review of the summary adopted by the Board. Claiming that the summary does not fairly and clearly express the intent and meaning of the proposed law and that the fiscal impact statement is incomplete and misleading, Beimford requests that we reverse the Board's action and remand the case to the Board with instructions to correct these alleged deficiencies.

## II.

In reviewing the action of the Board, we are guided by the following long-established principles:

> (1) [W]e must not in any way concern ourselves with the merit or lack of merit of the proposed [law or constitutional] amendment since, under our system of government, that resolution rests with the electorate; (2) all legitimate presumptions must be indulged in favor of the propriety of the board's action; and (3) only in a clear case should a title prepared by the board be held invalid.

*Bauch v. Anderson,* 178 Colo. 308, 310, 497 P.2d 698, 699 (1972). In this case, therefore, our role is necessarily a limited one. We must initially determine whether the summary impartially reflects the true sense of the proposed law. *See In re Proposed Initiative Concerning Drinking Age,* 691 P.2d at 1130; *In re Proposed Initiated Constitutional Amendment of Education, 1984,* 682 P.2d 480, 482 (Colo. 1984). We must then determine whether the summary contains an estimate and explanation of any fiscal impact which the proposed law may have upon the state or any of its political subdivisions, to the extent that such impact is reasonably determinable. *See In re Title, Ballot Title and Submission Clause, and Summary Pertaining to the Casino Gaming Initiative,* 649 P.2d 303, 307 (Colo.1982); *In re: Second Initiated Constitutional Amendment Respecting the Rights of the Public to Uninterrupted Service By Public Employees of 1980,* 200 Colo. 141, 148, 613 P.2d 867, 871–72 (1980).

## III.

Beimford raises a twofold challenge to the summary: (1) that it does not reflect the true meaning and purpose of the proposed law because it fails to mention that the revenues which would be generated from the proposed tax increase would be in addition to funds currently allocated to health care programs for the medically indigent and programs for smoking-related diseases; and (2) that it will mislead prospective petition-signers into believing that no funds are currently allocated to these programs and will consequently create a bias in favor of the proposed law. We reject Beimford's claim.

It is clear from reading the proposed law that its primary purpose is to raise additional revenues through a tax increase on tobacco products and to use these revenues to fund health care programs for the medically indigent and programs for smoking-related diseases. The summary clearly and impartially expresses this basic purpose. The fact that the summary fails to mention that these programs presently receive funding from a different source does not amount to an invalidating infirmity. Our observations in *In re Proposed Initiative on Transfer of Real Estate,* 200 Colo. 40, 43, 611 P.2d 981, 983 (1980), concerning a proposed constitutional amendment are equally applicable to the proposed legislation at issue here:

> We do not consider that the failure to mention the existence of a statute addressing the same or similar subject as that of the proposed amendment has any effect on the acceptability of the ... summary.... As we have said, that language need only express the intent and meaning of the proposed constitutional amendment.

Furthermore, the summary is not intended to fully educate the people on all aspects of the proposed law. The General Assembly has provided for the publication of all proposed initiatives in section 1–40–114, 1B C.R.S. (1980), which requires the Secretary of State to cause to be published in two

issues of every legal newspaper a "true copy of the title and text" of each initiated or referred measure "with the number and form in which the ballot title thereof will be printed in the official ballot."[1] The Board's duty is merely to summarize the central features of the initiated measure in a clear and concise manner without arguing either for or against the proposal. *E.g., In re Title, Ballot Title and Submission Clause, and Summary (Mineral Production Tax),* 644 P.2d 20, 23 (Colo.1982). It is not required to include in the summary every effect that the proposed measure may have on the present statutory scheme. *Casino Gaming Initiative,* 649 P.2d at 310.

Our function is not to rephrase the language adopted by the Board in order to secure the most precise and exact summary possible. *See, e.g., In re Proposed Initiative Concerning Drinking Age,* 691 P.2d at 1132. Unless the summary adopted by the Board is clearly misleading, we will not interfere with the Board's choice of language so long as that language fairly reflects the purport of the proposed amendments. *In re Proposed Initiative Concerning Drinking Age,* 691 P.2d at 1132. The language chosen by the Board in this case measures up to the applicable legal standard.

## IV.

Beimford next contends that the fiscal impact statement is deficient for the following reasons: (1) it fails to disclose the amounts of money which would be distributed to the programs; (2) it fails to calculate the costs of administration and collection which presumably would accompany the tax increase; and (3) it fails to contain an adequate "explanation" of the fiscal impact of the proposed law. Again, we reject Beimford's contentions.

■ Section 1–40–101(2), 1B C.R.S. (1980), requires no more than an "estimate" and an "explanation" of the fiscal impact of the proposed measure on the state or its political subdivisions. *E.g., Casino Gaming Initiative,* 649 P.2d at 306–07. The summary at issue here explicitly states that the amount of estimated revenues to be generated by the proposed tax increase would be between fifty-five million and sixty-five million dollars in the 1988–89 fiscal year. In addition, the summary states that ninety-five percent of the revenues attributable to the tax increase would be used for funding health care programs for the medically indigent and the remaining five percent would be placed in a special fund to provide support for prevention, education, and research programs for smoking-related diseases of the heart, the lung, and cancer. It is quite obvious that the summary provides prospective petition-signers with a fair estimate of the amount of money which would be allocated to the programs from the anticipated tax revenues. No more can be reasonably required of the Board than this.

■ Beimford's argument that the summary fails to calculate the collection and distribution costs which presumably would accompany the tax increase is similarly without merit. It is by no means obvious that the administrative costs associated with the proposed law would increase above the present costs expended in the collection and distribution of tobacco taxes. Moreover, even if some increase might occur, it is utter speculation to claim that such increase would so significantly affect the projected revenues as to render the fiscal impact statement misleading.

■ Finally, we reject Beimford's argument that the summary fails to contain an adequate "explanation" of the fiscal impact of the proposed law. The fiscal impact statement explains that the effect of the

1. Section 1–40–114(1), 1B C.R.S. (1980), requires publication in two issues of every legal newspaper, as defined in sections 24–70–102 and 24–70–103(1), 10 C.R.S. (1982). Section 24–70–102 defines a daily newspaper, a triweekly newspaper, semiweekly newspaper, and a weekly newspaper. Section 24–70–103(1) provides generally that any legal notice shall be published only in a daily, a triweekly, a semiweekly, or a weekly newspaper "of general circulation and printed or published in whole or in part in the county in which such notice or advertisement is required to be published."

proposed law would be to increase taxes on tobacco products and thus generate an estimated fifty-five to sixty-five million dollars in fiscal year 1988–89. It further states that ninety-five percent of the new revenues would be used to fund health care programs for the medically indigent and that the additional five percent would be credited to a fund for the purpose of supporting prevention, education, and research programs for various smoking-related diseases. We are satisfied that the summary represents an adequate explanation of the fiscal impact of the proposed law.

The summary prepared by the Board fairly and accurately reflects the true purport of the proposed law, and includes an adequate estimate and explanation of the fiscal impact which the proposed law would have on the state or any of its political subdivisions. We accordingly affirm the action of the Board.

### APPENDIX

*Amendment to Subsection 39–22–623(2) of Cigarette Tax Ballot Initiative*

Amend 39–22–623(2) to add the following sentence at the end of the subsection:

"NOTWITHSTANDING ANY PROVISIONS IN SECTION 39–22–623 OR 39–28–110 TO THE CONTRARY AND IN ORDER TO HOLD SUCH LOCAL GOVERNMENTS HARMLESS, IF TOTAL REVENUES APPORTIONED TO INCORPORATED CITIES AND INCORPORATED TOWNS AND COUNTIES IN ANY FISCAL YEAR FROM THE APPORTIONMENT IN SECTION 39–22–623 ARE LESS THAN THE TOTAL REVENUES APPORTIONED TO SUCH LOCAL GOVERNMENTS IN THE STATE FISCAL YEAR ENDING JUNE 30, 1988, THE DIFFERENCE SHALL BE DISTRIBUTED FROM REVENUES AVAILABLE PURSUANT TO SUBSECTION 39–28–110(2) TO SUCH LOCAL GOVERNMENTS WITHIN THIRTY DAYS OF THE CLOSE OF THE APPLICABLE STATE FISCAL YEAR."

### CIGARETTE TAX BALLOT INITIATIVE

SECTION 8. 39–22–623, Colorado Revised Statutes, 1982 Repl.Vol. as amended, is amended to read:

39–22–623. *Disposition of collections.* (1)(a)(I) Repealed, L. 86, p. 1111, 10, effective July 1, 1987.

(II) Effective July 1, 1987, an amount equal to twenty-seven percent of the gross state cigarette tax shall be apportioned to incorporated cities and incorporated towns which levy taxes and adopt formal budgets and to counties. For the purposes of this section, a city and county shall be considered as a city. The city or town share shall be apportioned according to the percentage of state sales tax revenues collected by the department of revenue in an incorporated city or town as compared to the total state sales tax collections that may be allocated to all political subdivisions in the state; the county share shall be the same as that which the percentage of state sales tax revenues collected in the unincorporated area of the county bears to total state sales tax revenues which may be allocated to all political subdivisions in the state. The department of revenue shall certify to the state treasurer, at least annually, the percentage for allocation to each city, town, and county, and such percentage for allocation so certified shall be applied by said department in all distributions to cities, towns, and counties until change by certification to the state treasurer. In order to qualify for distributions of state income tax moneys, units of local government are prohibited from imposing fees, licenses, or taxes on any person as a condition for engaging in the business of selling cigarettes or from attempting in any manner to impose a tax on cigarettes. For purposes of this paragraph (a), the "gross state cigarette tax" means the total tax before the discount provided for in section 39–28–104(1).

(b) Following apportionment of the city, town, and county shares pursuant to paragraph (a) of this subsection (1) and pursuant to section 29–21–101, C.R.S. 1973, all remaining funds shall be credited to the general fund, and the general assembly shall make appropriations therefrom for the expenses of the administration of this article.

(c) Distribution to each city, town, and county shall be made monthly, no later than the fifteenth day of the second successive month after the month for which cigarette tax collections are made, commencing in October, 1973.

(d) Each city, town, and county, upon request and at reasonable times, shall be entitled to verify with the executive director or his designated representative the proceeds to which the local government is entitled pursuant to the provisions of this section.

(e) Where, prior to July 1, 1973, a city or town has pledged the proceeds of all or a portion of its local cigarette tax or tax on the occupation of selling cigarettes for the payment of bonds or other obligations, the city or town shall pledge or place in trust an equivalent amount from its share of the proceeds of the state cigarette tax for the payment of such bonds or other obligations.

(f) Commencing January 1, 1978, in order to replace any loss of revenue to the old age pension fund, the department of revenue shall certify to the state treasurer an amount equal to the sum accurately estimated for revenue loss to the old age pension fund from amendments made to section 39–23–113(2)(a), and such amount shall be credited to the old age pension fund.

(2) EFFECTIVE 30 DAYS FOLLOWING OFFICIAL DECLARATION OF ITS PASSAGE, SECTION 39–22–623(1)(a)(II) SHALL BE AMENDED SUCH THAT THE TWENTY–SEVEN PERCENT OF GROSS STATE CIGARETTE TAXES APPORTIONED TO INCORPORATED CITIES AND INCORPORATED TOWNS SHALL NOT INCLUDE THE ADDITIONAL TAX OF 10 MILL PER CIGARETTE AND TWENTY–EIGHT CENTS PER OUNCE ON ALL OTHER TOBACCO PRODUCTS AS SET FORTH IN SECTION 39–28–103(2). THE DISPOSITION OF THESE COLLECTIONS SHALL BE AS SET FORTH IN SECTION 39–28–110(2)(a)(b)(c) AND (d).

NOTWITHSTANDING ANY PROVISIONS IN SECTION 39–22–623 OR 39–28–110 TO THE CONTRARY AND IN ORDER TO HOLD SUCH LOCAL GOVERNMENTS HARMLESS, IF TOTAL REVENUES APPORTIONED TO INCORPORATED CITIES AND INCORPORATED TOWNS AND COUNTIES IN ANY FISCAL YEAR FROM THE APPORTIONMENT IN SECTION 39–22–623 ARE LESS THAN THE TOTAL REVENUES APPORTIONED TO SUCH LOCAL GOVERNMENTS IN THE STATE FISCAL YEAR ENDING JUNE 30, 1988, THE DIFFERENCE SHALL BE DISTRIBUTED FROM REVENUES AVAILABLE PURSUANT TO SUBSECTION 39–28–110(2) TO SUCH LOCAL GOVERNMENTS WITHIN THIRTY DAYS OF THE CLOSE OF THE APPLICABLE STATE FISCAL YEAR.

SECTION 13. 39–28–103, Colorado Revised Statutes, 1982 Repl.Vol., is amended to read:

39–28–103. *Tobacco products tax levied.* (1) There is levied and shall be collected and paid to the department a tax upon the sale of cigarettes by wholesalers of ten mills on each cigarette.

(2) NOTWITHSTANDING THE TEN MILL RATE PROVISIONS OF PARAGRAPH (1) COMMENCING 30 DAYS FOLLOWING OFFICIAL DECLARATION OF PASSAGE OF THESE AMENDMENTS, THE RATE OF TAX IMPOSED PURSUANT TO THIS PARAGRAPH (1) SHALL BE TWENTY MILLS ON EACH CIGARETTE AND THE RATE OF TAX ON ALL OTHER TOBACCO PRODUCTS AS DEFINED IN ARTICLE 28.5 SHALL BE INCREASED TWENTY–EIGHT CENTS PER OUNCE.

SECTION 20. 39–28–110, Colorado Revised Statutes, 1982 Repl.Vol., is amended to read:

39–28–110. *Distribution of tax collected.* (1) All sums of money received and collected in payment of the tax imposed by the provisions of this article, except license fees received under section 39–28–102, shall be transmitted to the state treasurer who shall distribute such money as follows: Fifteen percent to the general fund; and

eighty-five percent to the old age pension fund.

(2) NOTWITHSTANDING THE PROVISIONS OF PARAGRAPH (1), THE AMOUNT EQUAL TO REVENUES ATTRIBUTABLE TO THE ADDITIONAL TEN MILL IMPOSED ON CIGARETTES AND 28¢ PER OUNCE ON ALL OTHER TOBACCO PRODUCTS IN SECTION 39-28-103(2) SHALL BE USED AS FOLLOWS:

(a) AN AMOUNT EQUAL TO NINETY-FIVE PERCENT (95%) OF THE REVENUES GENERATED BY SECTION 39-28-103(2) SHALL BE RESTRICTED FOR USE AS FUNDING FOR PROGRAMS TO PROVIDE HEALTH CARE FOR THE MEDICALLY INDIGENT. THIS SUPPLEMENTATION SHALL BE IN ADDITION TO AND INDEPENDENT FROM ANY FUNDS CURRENTLY ALLOCATED FOR PROGRAMS TO PROVIDE HEALTH CARE FOR THE MEDICAL INDIGENT ESTABLISHED PURSUANT TO ARTICLE 15 OF TITLE 26, C.R.S. ADMINISTRATION OF TAX REVENUES GENERATED PURSUANT TO 39-28-103(2) SHALL BE ACCORDING TO THE METHOD USED FOR CURRENT ADMINISTRATION OF MEDICAL INDIGENT FUNDING. SECTIONS 39-28-103(2) AND 39-28-110(2)(a) AND (b) SHALL NOT BE AFFECTED BY THE EXPIRATION OR MODIFICATION OF ARTICLE 15 OF TITLE 26, C.R.S.

(b) AN AMOUNT EQUAL TO FIVE PERCENT (5%) OF THE REVENUES GENERATED BY SECTION 39-28-103(2) SHALL BE PLACED IN A SPECIAL FUND WHICH SHALL PROVIDE SUPPORT FOR PREVENTION, EDUCATION AND RESEARCH PROGRAMS IN ACTIVE AND PASSIVE SMOKING RELATED DISEASES OF HEART, LUNG AND CANCER. THE ADMINISTRATION AND METHOD OF ALLOCATION FOR THESE FUNDS IN 39-28-110(2)(b) SHALL BE DETERMINED BY A SEVEN PERSON SPECIAL COMMISSION TO BE APPOINTED BY THE GOVERNOR OF COLORADO. THE COMMISSION SHALL BE COMPOSED OF INDIVIDUALS WITH INTEREST AND BACKGROUND IN PREVENTION, EDUCATION AND RESEARCH IN SMOKING-RELATED DISEASES OF THE HEART, LUNG AND CANCER.

(c) ALL MONEYS SHALL BE CONTINUOUSLY APPROPRIATED AS REVENUES ARE RECEIVED.

(d) THE DISTRIBUTION OF TAX AS SET FORTH IN ARTICLE 39-28-110(2)(a)(b) AND (c) SHALL COMMENCE 30 DAYS FOLLOWING OFFICIAL DECLARATION OF PASSAGE OF THESE AMENDMENTS.

(3) DISTRIBUTION OF THE ADDITIONAL 10 MILL PER CIGARETTE TAX AND ADDITIONAL 28¢ PER OUNCE TAX ON TOBACCO PRODUCTS AS AMENDED IN 39-28-103(2) SHALL BE ACCORDING TO THE ALLOCATION FORMULA AS AMENDED IN 39-28-110(2)(a)(b)(c) AND (d) AND SHALL NOT BE ACCORDING TO SECTION 39-22-623.