In the Matter of the TITLE, BALLOT TITLE, SUBMISSION CLAUSE, AND SUMMARY, ADOPTED APRIL 4TH, 1990, PERTAINING TO THE PROPOSED INITIATIVE ON SURFACE MINING,

Robert Michael Flanagan, Petitioner,

and

Citizens Against Mountain Scars, Respondents,

and

Marilyn Handley, Charles B. Howe, and Douglas G. Brown, Title Setting Board.

No. 90SA200.

Supreme Court of Colorado,
En Banc.

June 25, 1990.

Hays and Wilson, James C. Wilson, Jr., Mark Bender, James H. Beimford, Denver, for petitioner.

Cogswell and Eggleston, P.C., Carolyn L. Buchholz, Shawn P. Mulligan, Denver, for respondents.

Duane Woodard, Atty. Gen., Charles B. Howe, Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Maurice G. Knaizer, Deputy Atty. Gen., for Title Setting Bd.

Justice VOLLACK delivered the Opinion of the Court.

In this original proceeding under section 1–40–102(3), 1B C.R.S. (1989 Supp.), Robert Michael Flanagan (Flanagan), a registered elector of the state of Colorado, challenges the legal sufficiency of the title, submission clause, and summary of an initiated measure for a proposed amendment to the Colorado Constitution on the subject of surface mining on the eastern slope of the Front Range. The ballot title, submission clause, and summary were approved by the Initiative Title Setting Review Board (the Board). We affirm the Board's action.

## I.

### A.

The Colorado Constitution reserves to the People the power to propose a law or constitutional amendment by means of an initiative. Colo. Const. art. V, § 1(2). The Board was created to assist in the People's exercise of the initiative power, *In re Increase of Taxes on Tobacco Products Initiative,* 756 P.2d 995, 996 (Colo.1988); *In re Proposed Initiative Concerning Drinking Age in Colorado,* 691 P.2d 1127, 1130 (Colo.1984), and is composed of the Secretary of State, the Attorney General, and the director of the Office of Legislative

Legal Services. § 1–40–101(2), 1B C.R.S. (1989 Supp.). Before a proposed law or constitutional amendment may be submitted to the voters for their approval or rejection, the Board is required to fix a title for the proposed measure, a ballot title and submission clause, and a summary. § 1–40–101(2).

Subsection 1–40–101(2) directs the Board to consider, in setting a title, "the public confusion that might be caused by misleading titles." Subsection 1–40–101(2) also requires the Board to, "whenever practicable, avoid titles for which the general understanding of the effect of a 'yes' or 'no' vote will be unclear." Subsection 1–40–101(2) also provides that the title "shall correctly and fairly express the true intent and meaning" of the proposed law or constitutional amendment. Subsection 1–40–101(2) also states:

> Ballot titles shall be brief, shall not conflict with those selected for any petition previously filed for the same election, and shall be in the form of a question which may be answered "yes" or "no" and which shall unambiguously state the principle of the provision sought to be added, amended, or repealed.

Subsection 1–40–101(2) requires the summary adopted by the Board to be "clear and concise." Subsection 1–40–101(2) provides: "The summary shall be true and impartial and shall not be an argument, nor likely to create prejudice, either for or against the measure."

Section 1–40–102(3) authorizes any registered elector to file a motion for hearing with the Secretary of State, on the basis that the titles, summary, and submission clause are "unfair" or "do not clearly express the true meaning and intent of the proposed law or constitutional amendment." If the Board denies the motion for rehearing, the registered elector is authorized to petition this court for a review of the Board's action. *Id.*

### B.

Respondent Citizens Against Mountain Scars (CAMS) has proposed an initiative that prohibits surface mining of aggregate or gravel, including related activities, in the mountains along the east slope of the Front Range within view of the cities or counties of Denver, Colorado Springs, Manitou Springs, Boulder, Pueblo, and Fort Collins, if that mining "may scar the land surface." The proposed initiative, which is reproduced in the appendix of this opinion, also provides that

> surface mining of aggregate or gravel, including related activities, that may scar the land surface shall be prohibited within view of any of the following areas designated by the State of Colorado, any county, city and county, city, town, or other general purpose unit of local government of the State of Colorado: state and county parks, monuments, wildlife refuges, and officially designated hiking trails.

CAMS submitted the initiative to the Board, which set the title, ballot title and submission clause, and summary.

The Board set the following title for the initiative:

> AN AMENDMENT TO THE COLORADO CONSTITUTION PROHIBITING SURFACE MINING OF AGGREGATE OR GRAVEL, INCLUDING RELATED ACTIVITIES, THAT MAY SCAR THE LAND SURFACE ALONG THE EAST SLOPE OF THE FRONT RANGE, AND ELSEWHERE IN THE STATE, WITHIN VIEW OF PARKS, MONUMENTS, WILDLIFE REFUGES, AND HIKING TRAILS DESIGNATED BY THE STATE OF COLORADO OR BY A LOCAL GOVERNMENT, AND PROVIDING FOR MINING RECLAMATION REGULATION BY LOCAL GOVERNMENTS.

The Board designated the following ballot title and submission clause for the initiative:

> SHALL THERE BE AN AMENDMENT TO THE COLORADO CONSTITUTION PROHIBITING SURFACE MINING OF AGGREGATE OR GRAVEL, INCLUDING RELATED ACTIVITIES, THAT MAY SCAR THE LAND SURFACE ALONG THE EAST SLOPE OF THE FRONT RANGE, AND ELSEWHERE

IN THE STATE, WITHIN VIEW OF PARKS, MONUMENTS, WILDLIFE REFUGES, AND HIKING TRAILS DESIGNATED BY THE STATE OF COLORADO OR BY A LOCAL GOVERNMENT, AND PROVIDING FOR MINING RECLAMATION REGULATION BY LOCAL GOVERNMENTS?

The summary prepared by the Board states:

The purpose of this amendment is to halt the destruction of scenic resources by prohibiting the surface mining of aggregate or gravel and activities related to such mining in the mountains along the east slope of the Front Range within view of Denver, Colorado Springs, Manitou Springs, Boulder, Pueblo, and Fort Collins. The measure also prohibits such mining and related activities within view of state and county parks, monuments, wildlife refuges, and hiking trails which have been designated by the State of Colorado or a general purpose unit of local government. Noise or pollution of any kind from such mining operations and related activities which affects such designated areas shall be prohibited. A general purpose unit of local government may also exercise the authorities specified in the section.

The Mined Land Reclamation Board shall be required to give notice to and to confer with any general purpose unit of local government that may be affected by an application or other request that may be submitted to the MLRB. Any such local government may adopt reclamation or performance bond requirements for aggregate or gravel surface mines which are in addition to or more stringent than any such requirements promulgated by the MLRB. Such requirements shall be incorporated by the MLRB as permit conditions or as conditions for performance bond release and may be enforced by the MLRB and by the local government. Any such local government may also adopt civil or criminal penalties or enforcement provisions for violations of its adopted requirements.

The measure requires that each performance bond posted by each aggregate or gravel surface mine as of January 1, 1991, shall be reviewed and modified by the MLRB to ensure that it is adequate to pay all costs to reclaim any surface area disturbed by such operations and their related activities. Such review is to be completed by January 1, 1994.

All provisions of the initiative shall become effective January 1, 1992.

The fiscal impact of this measure is indeterminate.

After the Board fixed the title, ballot title and submission clause, and summary, Flanagan filed a timely motion for rehearing with the Secretary of State. § 1-40-102(3). The Board met, received comments from Flanagan and his counsel, and voted to retain the title, ballot title and submission clause, and summary originally fixed by the Board. Flanagan then filed this original proceeding for review of the Board's action.

II.

Flanagan makes the following six claims: (1) that the Board must note in the summary facial ambiguities in the initiative; (2) that the title language does not clearly and fairly express the true meaning of the initiative; (3) that the ballot title and submission clause contains two separate and distinct propositions which cannot be answered "yes" or "no"; (4) that the ballot title and submission clause is rendered invalid by its failure to state how the constitution is to be amended; (5) that the ballot title and submission clause is invalid because it does not specify certain aspects of the proposed amendment; and (6) that the summary is invalid because it fails to specify certain aspects of the proposed amendment.

Before addressing Flanagan's claims, we revisit the established principles which guide our review of the Board's action.

"(1) [W]e must not in any way concern ourselves with the merit or lack of merit of the proposed [law or constitutional] amendment since, under our system of government, that resolution rests with

the electorate; (2) all legitimate presumptions must be indulged in favor of the propriety of the board's action; and (3) only in a clear case should a title prepared by the board be held invalid." *Increase of Taxes on Tobacco Products Initiative*, 756 P.2d at 998 (quoting *Bauch v. Anderson*, 178 Colo. 308, 310, 497 P.2d 698, 699 (1972)) (brackets in original); *see also In re Proposed Constitutional Amendment Under the Designation "Pregnancy"*, 757 P.2d 132, 134 (Colo.1988) (collecting cases). "Our role is to determine whether the title, [the title and submission] clause, and [the] summary fairly reflect the purport of the proposed amendment." *Initiative Concerning Drinking Age*, 691 P.2d at 1130. Our duty is to "ensure that the Board has designated a title, ballot title and submission clause, and summary by which 'neither the signers of initiative petitions nor the electors voting on an initiated measure will be misled.'" *Constitutional Amendment Under the Designation "Pregnancy"*, 757 P.2d at 134 (quoting *Initiative Concerning Drinking Age*, 691 P.2d at 1130). It is not our function, nor is it the function of the Board, to "go beyond ascertaining the intent of the initiative's drafters so as to interpret the meaning of the language proposed or to suggest how it will be applied if adopted by the electorate." *Constitutional Amendment Under the Designation "Pregnancy"*, 757 P.2d at 134–35.

## A.

■ Flanagan first argues that the summary adopted by the Board fails to note a facial ambiguity in the proposed amendment. Flanagan argues that the proposed amendment is ambiguous because it prohibits certain surface mining activities but also increases reclamation and performance bond standards. We reject Flanagan's argument that the Board was required to note in the summary that the proposed amendment is ambiguous.

"[T]he summary is not intended to fully educate the people on all aspects of the proposed law," *Increase of Taxes on Tobacco Products Initiative*, 756 P.2d at 998, and it "need not set out in detail every aspect of the initiative." *Constitutional Amendment Under the Designation "Pregnancy"*, 757 P.2d at 137. We have previously noted that the documents produced by the Board need not be so flawless as to constitute "models for future draftsmanship." *Id.; accord Initiative Concerning Drinking Age*, 691 P.2d at 1132. In addition, "[n]either the board nor this court is authorized to interpret the meaning of a proposed amendment prior to its adoption." *In re Proposed Initiative Concerning "State Personnel System"*, 691 P.2d 1121, 1125 (Colo.1984).

The initiative prohibits the surface mining of aggregate or gravel in certain areas along the east slope of the Front Range if that surface mining "may scar the land," and authorizes local governments to prohibit such surface mining in other designated areas. The initiative also expands the Colorado Mined Land Reclamation Board's (the MLRB's) duty to confer with counties pursuant to section 34–32–116, 14 C.R.S. (1989 Supp.), and authorizes local governments to adopt additional, or more stringent, reclamation or performance bond requirements.

The summary prepared by the Board refers to both the initiative's prohibition of certain specified mining activities, and initiative provisions expanding the MLRB's duties and authorizing local governments to adopt additional, or more stringent, reclamation or performance bond requirements. The Board was not required to give its opinion about whether these provisions render the initiative ambiguous. Indeed, had the Board done so it would have interpreted the meaning of the proposed amendment prior to its adoption. *Constitutional Amendment Under the Designation "Pregnancy"*, 757 P.2d at 134–35; *Initiative Concerning "State Personnel System"*, 691 P.2d at 1125.

## B.

■ Flanagan next argues that the title set by the Board does not correctly and fairly express the true intent and meaning of the proposed amendment. Specifically,

Flanagan argues that the title creates prejudice against the mining of aggregate or gravel because it contains the word "scar." Flanagan also argues that the title improperly suggests that whether mining will be prohibited will depend on some subjective judgment based on whether the proposed surface mining project "may scar the land." Flanagan also argues that the title fails to reflect that performance bonds as well as mining reclamation will be subject to local oversight, and that the word "regulation" in the title is improper. We reject Flanagan's arguments.

Flanagan's argument that the presence of the word "scar" creates prejudice against the mining of aggregate or gravel is simply out of place. The initiative prohibits surface mining in certain areas that "may scar the land surface." The word "scar" is an operative word in the initiative itself. By placing the word "scar" in the title the Board has fairly and accurately reported the intent and meaning of the proposed amendment. *Initiative Concerning Drinking Age*, 691 P.2d at 1130; *In re Casino Gaming Initiative*, 649 P.2d 303, 310 (Colo.1982). Flanagan's second argument against the sufficiency of the title is that the title improperly suggests that only surface mining in designated areas along the Front Range which "may scar the land" will be prohibited. Flanagan complains that the title does not accurately reflect the practical effect of the proposed amendment, which he alleges will be to prohibit all aggregate surface mining in certain areas along the Front Range. The title describes the proposed amendment as "prohibiting surface mining of aggregate or gravel, including related activities, that may scar the land surface." Our inquiry is limited to determining whether this language in the title fairly reflects the purpose of the proposed amendment. *Initiative Concerning Drinking Age*, 691 P.2d at 1130. In this case the title language describes exactly the purpose of the proposed amendment. Regardless of the actual legal effect the proposed amendment will have, its language prohibits surface mining which "may scar the land" in certain areas along the Front Range. The

ballot title is fair and accurate because it repeats the operative words "may scar the land." *See id.*

Flanagan challenges the title on the ground that it omits reference to the fact that the proposed amendment subjects performance bonds to local government oversight, and that the word "regulation" in the title does not fairly describe the increased requirements imposed by the proposed amendment. We reject these arguments. "[T]he board need not and cannot describe every feature of a proposed measure in the titles and submission clause." *Initiative Concerning "State Personnel System"*, 691 P.2d at 1124; *see also Constitutional Amendment Under the Designation "Pregnancy"*, 757 P.2d at 136. The title accurately reflects that local governments will have a measure of oversight over surface mining operations. The word "regulation" fairly expresses the increased requirements imposed on the surface mining industry by the proposed amendment.

### C.

■■ Flanagan next argues that the ballot title and submission clause · is insufficient because it contains two distinct propositions which cannot be answered with a "yes" or "no." We disagree. The ballot title and submission clause state a compound question which can be answered "yes" or "no." § 1–40–101(2). It asks potential petition signers and voters if there shall be an amendment to the constitution which prohibits surface mining that may scar the land surface along the eastern slope of the Front Range, and provides for mining reclamation regulation by local governments. The ballot title and submission clause is fair and accurate because it reports that the proposed amendment provides for both the described prohibition and the described regulation. The ballot title and submission clause asks voters to approve both the prohibition and the regulations, or reject the entire proposed amendment. The compound form of the ballot title and submission clause is consistent with subsection 1–40–101(2). *See Increase of Taxes on Tobacco Products Initiative*, 756 P.2d at 997; *Initiative Concerning*

*"State Personnel System"*, 691 P.2d at 1123.

### D.

Flanagan next argues that the ballot title and submission clause is insufficient because it fails to specify how the constitution is to be amended. We disagree. Subsection 1–40–101(2) states that the ballot titles shall "unambiguously state the principle of the provision sought to be added, amended, or repealed." This provision does not require that the ballot title and submission clause identify the prospective article number and section number of the proposed amendment. *See Casino Gaming Initiative*, 649 P.2d at 312; *In re Mineral Production Tax Initiative*, 644 P.2d 20, 25 (Colo.1982).

### E.

Flanagan next argues that the ballot title and submission clause is inadequate because it uses the word "regulation" to describe the authority local governments will have over mining reclamation under the proposed amendment. Flanagan asserts that the ballot title and submission clause should explicitly state that under the proposed amendment local governments can increase mining reclamation requirements. We reject this argument for the same reason that we rejected Flanagan's identical challenge to the ballot title. *See* part II.B., *supra*. The word "regulation" fairly expresses the meaning and intent of the proposed amendment.

### F.

Finally, Flanagan argues that the summary is defective because it fails to advise the reader that the practical effect of the proposed amendment will be to prohibit all surface mining of aggregate and gravel in certain areas along the Front Range. By its terms the proposed amendment prohibits all surface mining of aggregate which "may scar the land" in certain areas along the Front Range. In order to accept Flanagan's argument we would have to conclude that the legal effect of the proposed amendment will be to prohibit all aggregate surface mining in certain areas along the Front Range, which we cannot do

in this action. *Constitutional Amendment Under the Designation "Pregnancy"*, 757 P.2d at 134–35; *Initiative Concerning "State Personnel System"*, 691 P.2d at 1125. We conclude that the summary accurately reflects the purpose of the amendment. The summary states that "[t]he purpose of this amendment is to halt the destruction of scenic resources by prohibiting the surface mining of aggregate or gravel and activities related to such mining in the mountains along the east slope of the Front Range within view of [designated cities and counties]." Thus the summary makes the very point that Flanagan claims it omits: that the proposed amendment will institute a prohibition of aggregate surface mining in certain areas along the Front Range. Whether or not this will be the practical effect of the amendment, we conclude that the summary is not misleading, because the title, and the ballot title and submission clause, both parrot the language of the amendment that such surface mining will be prohibited by the amendment if it "may scar the land."

Flanagan makes two additional arguments against the sufficiency of the summary. First, Flanagan argues that prospective signers of the petitions may not realize that the amendment would apply to present, as well as future, surface mining operations. We disagree. The summary states that "[t]he purpose of this amendment is to halt the destruction of scenic resources by prohibiting the surface mining of aggregate or gravel" in the designated areas. The summary also speaks in terms of a prohibition of certain surface mining activities. The summary fairly communicates the scope of the prohibition contained in the proposed amendment.

Second, Flanagan argues that the summary is insufficient because it fails to mention that the proposed amendment will not affect surface mining for aggregate on federal land. *See Brubaker v. Board of County Comm'rs*, 652 P.2d 1050, 1054 (Colo.1982) (preemption doctrine prevented board of county commissioners from prohibiting mining activities authorized by federal law). We disagree. Whether the amendment can prohibit surface mining for aggregate on federal land is a question

appropriately reserved for litigation under the amendment should it be adopted. The Board is not responsible for anticipating, and taking a position on, legal issues which may be presented by a proposed amendment. *Constitutional Amendment Under the Designation "Pregnancy"*, 757 P.2d at 134–35; *Initiative Concerning "State Personnel System"*, 691 P.2d at 1125.

The Board's action is affirmed.

MULLARKEY, J., does not participate.

## APPENDIX

### Sponsored by Citizens Against Mountain Scars

### Amended Initiative—4/12/90

### THIS IS AN INITIATIVE TO AMEND THE COLORADO CONSTITUTION

This Initiative shall amend the Constitution of Colorado by adding the following section to Article XVI, concerning surface scarring caused by surface mining of aggregate or gravel.

By this Initiative, the People of the State of Colorado desire to halt the destruction of scenic resources caused by inadequately controlled aggregate or gravel surface mining operations in the mountains, particularly along the east slope of the Front Range.

Surface mining of aggregate or gravel, including related activities, that may scar the land surface shall be prohibited in the mountains along the east slope of the Front Range within view of the following cities or counties: Denver, Colorado Springs, Manitou Springs, Boulder, Pueblo, and Fort Collins. Further, surface mining of aggregate or gravel, including related activities, that may scar the land surface shall be prohibited within view of any of the following areas designated by the State of Colorado, any county, city and county, city, town, or other general purpose unit of local government of the State of Colorado: state and county parks, monuments, wildlife refuges, and officially designated hiking trails. Within such areas, noise or pollution of any kind by surface mining of aggregate or gravel, including related activities that affects or may adversely affect the environment or interferes or may interfere with user enjoyment shall be prohibited. The terms "related activities", as used herein, shall include construction and maintenance of access roads, storage of property or processing conducted at or near the mine and within mine permit boundaries.

Any other county, city and county, city, town or general purpose unit of local government within the State of Colorado *may* also exercise the authorities specified in this section of Article XVI of the Constitution of Colorado by ordinance duly adopted or by municipal initiative.

The requirement that the Colorado Mined Land Reclamation Board ("MLRB") confer with counties, as provided in C.R.S. Section 34–32–116, shall be expanded to require MLRB to give adequate notice and confer with every general purpose unit of local government that may be affected by an application or request to site, commence operations, renew a permit, increase acreage, commence reclamation or release a performance bond for an aggregate or gravel surface mine. Any general purpose unit of local government, preferably with citizen advisory board or other citizen participation, may adopt reclamation or performance bond requirements for aggregate or gravel surface mines in addition to or more stringent than requirements promulgated by the MLRB, including but not limited to revegetation requirements, reclamation schedules, performance bond criteria and amounts and sufficiency of reclamation efforts. MLRB's obligation to confer shall include the requirement that all additional or more stringent reclamation or performance bond requirements adopted by a general purpose unit of local government shall be incorporated by MLRB as a permit condition or condition for performance bond release or both of aggregate or gravel surface mining operations located within the jurisdiction of such general purpose unit of local government.

All additional or more stringent reclamation or performance bond requirements adopted by a general purpose unit of local government shall be enforceable both by that local government and by the MLRB. Each general purpose unit of local government adopting additional or more stringent

standards may adopt civil, criminal, or injunctive penalties and enforcement provisions. Any violation of the requirements adopted by a local government shall be subject to MLRB and local government penalties and enforcement provisions.

The performance bond posted by each aggregate or gravel surface mine as of January 1, 1991, shall be reviewed and modified, as necessary, by MLRB, in conference with each affected general purpose unit of local government to ensure that it is adequate to pay all costs to reclaim any surface area disturbed by the aggregate or gravel surface mine and related activities and, further, to ensure that no such reclamation costs shall be borne by the citizens of the State of Colorado. All such performance bond reviews and modifications shall be completed by January 1, 1994.

This Initiative and all of its provisions shall become effective on January 1, 1992.