MUNICIPAL SERVICES COR-
PORATION and Gloria
David, Petitioners,

v.

Jim KUSLER, as Secretary of State,
State of North Dakota,
Respondent.

Civ. No. 920244.

Supreme Court of North Dakota.

Sept. 17, 1992.

Raymond T. Reott (argued), Gretchen M. Livingston (appearance) of Jenner & Block, Chicago, Ill., David J. Hogue (appearance) of Pringle & Herigstad, Minot, and Thomas F. Kelsch (appearance) of Kelsch, Kelsch, Ruff & Austin, Mandan, for petitioners.

Elaine Ayers (argued) and Laurie J. Loveland (appearance) Atty. General's Office, Bismarck, for respondent.

LEVINE, Justice.

Municipal Services Corporation (MSC), an owner and operator of a solid waste disposal facility in North Dakota, and Gloria David, a North Dakota citizen and taxpayer, applied to this court for an order directing Jim Kusler, the Secretary of State (Secretary), to demonstrate why he should not be enjoined from certifying on the November 3, 1992, election ballot an initiated measure that establishes an "Environmental Protection and Recycling Fund" and imposes a fee on the disposal or incineration of waste in this state. We issued an order on August 20, 1992, prohibiting the Secretary from certifying the petition containing the initiated measure until further order of this court. The Secretary filed a response to the application and also filed separate motions to dismiss the application and to vacate or modify our August 20, 1992, order.

Oral arguments were presented before this court on September 3, 1992. On that same date, because the time limits for placing the initiated measure on the ballot required prompt resolution of this dispute, we issued a dispositive order stating that this explanatory opinion would follow. In that order, we held that the ballot title prepared by the Secretary was legally sufficient and that the Secretary's approval of the initiated petition as to its form was proper. We vacated the August 20, 1992, temporary injunction and denied the request for permanent injunctive relief.

Pursuant to Art. III, § 2, of the North Dakota Constitution, the sponsors of the initiated measure presented their petition to the Secretary for approval as to form. The Secretary prepared a ballot title which was approved by the attorney general and affixed to the petition as required by statute. After circulating the petition to obtain necessary signatures, the sponsors submitted it to the Secretary for placing the initiated measure on the November 3, 1992, ballot.

In support of their application for a permanent injunction, MSC and David mounted two attacks: (1) the ballot title, prepared by the Secretary, did not accurately and fairly represent the initiated measure and (2) the Secretary should not have approved the petition "as to form."

 Art. III, § 6, N.D. Const., makes "[a]ll decisions of the secretary of state in regard to any [initiative or referendum] petition ... subject to review by the supreme court." Art. III, § 7, N.D. Const., makes "[a]ll decisions of the secretary of state in the petition process ... subject to review by the supreme court in the exercise of original jurisdiction." These provisions are self-executing and mandatory. Art. III, § 1, N.D. Const. So, our authority to review the Secretary's decisions on these matters is without limitation or qualifica-

tion. *Preckel v. Byrne,* 62 N.D. 356, 243 N.W. 823 (1932).

Our self-executing special jurisdiction under Art. III, §§ 6 and 7, N.D. Const., as referred to in *Preckel, id.,* is to be contrasted with our jurisdiction under Art. VI, § 2, N.D. Const., which gives us discretionary original jurisdiction. For example, in *State ex rel. Wefald v. Meier,* 347 N.W.2d 562 (N.D.1984), the attorney general petitioned this court for an appropriate writ, requiring us to review different ballot statements on a referendum petition prepared by the attorney general's office and the Secretary of State. We exercised our discretionary jurisdiction under Art. VI, § 2, N.D. Const., in that case. Because the petition here was brought under Art. III, N.D. Const., we exercise our mandatory jurisdiction under that article, and *State ex rel. Wefald v. Meier, id.,* is not controlling on the jurisdiction issue. In conducting our review, we independently examine the actions of the Secretary to determine whether he has complied with the law. *See, e.g., Lips v. Meier,* 336 N.W.2d 346 (N.D.1983).

The applicants argued that the ballot title, prepared and affixed to the petition by the Secretary, was inaccurate and did not fairly represent the proposed initiated measure.

Section 16.1–01–09, N.D.C.C., requires the Secretary, upon receiving a petition to initiate or refer a measure, to draft "a short and concise statement which must fairly represent the measure." That statement is called the "ballot title" which, when approved by the attorney general, must be affixed to the petition.

The full text of the ballot title, prepared by the Secretary for this initiated measure, states:

"This initiated measure establishes an environmental protection and recycling fund from moneys collected from *fees* for waste disposal or incineration in North Dakota. The fund shall be used for recycling programs and for cleanup of land, air or water pollution.

"The measure establishes a 50 cent per ton *fee* on waste generated within 100 miles from the final disposal site. The measure also establishes a *fee* on waste generated more than 100 miles from the final disposal point, equal to the cost of waste disposal at the disposal point closest to where it was generated less the *actual cost of disposal* at the final disposal facility. Waste site operators must collect the *fee* and may retain 1% of the *fee* collected." (Emphasis added.)

The applicants asserted that the ballot title failed in four ways to fairly represent the initiated measure: (1) it failed to inform the voters that the initiated measure imposed a tax on the people of the state, rather than a fee; (2) it did not inform the voters that the effect of the measure would be that those who generate waste would pay for the charges imposed by the measure, not those who operate disposal facilities or transport waste; (3) it inaccurately described the method of computing the fee imposed on waste generated beyond 100 miles from a disposal site; and (4) it did not inform the voters that the proceeds to be used for recycling and pollution cleanup would be reduced by administrative expenses.

The applicants' objections to the ballot title demonstrate a misunderstanding of the purpose of the ballot title. The statutory directive is that the Secretary prepare a "short and concise" statement "fairly" representing the proposed measure. We agree with the Arkansas Supreme Court's analysis of the purpose and scope of a ballot title:

"[T]he ballot title is designed to adequately summarize the provisions of the proposal and be complete enough to convey to the voter an intelligible idea of the scope and import of the proposal.... The ballot title must also be free from any misleading tendency, whether by amplification, omission or fallacy. It must not be tinged with partisan coloring....

"It is difficult to prepare a perfect ballot title. It is sufficient if it informs the voters with such clarity that they can cast their ballot with a fair understanding of the issue presented." (Citations omitted.) *Ferstl v. McCuen,* 296 Ark. 504, 758 S.W.2d 398, 400 (1988).

■ In reviewing a ballot title, the court must not concern itself with the merit or lack of merit of the proposed measure, because that determination rests with the electorate. *Matter of Title, Ballot Title, Etc.,* 649 P.2d 303 (Colo.1982). Furthermore, the ballot title need not encompass every possible effect of the measure nor must it convey possible problems that may arise upon implementing the measure. *Id.,* at 310. If the ballot title is neither misleading nor unfair, it is not our responsibility to draft a better one. *Manny v. Paulus,* 281 Or. 215, 573 P.2d 1248 (1978).

Having compared the ballot title with the full text of the initiated measure, we conclude that it is a concise statement that fairly represents the measure. That is all that the law requires it to be. The applicants' objections are primarily an attack on the substance of the proposed measure. Their objections reveal a fear that the electorate will not understand the ultimate consequences of the measure and will approve it, with dire consequences. The Secretary need not, and, indeed, must not, incorporate the expression of those concerns in the ballot title. *Matter of Title, Ballot Title, Etc., supra.*

■ The applicants objected that the ballot title used the word "fee" which is the same term that appears in the proposed measure. They argued that the Secretary should have recognized that the "fee" was actually a "tax" and that he should have used the latter term in the ballot title. We disagree. If the applicants believe that the measure actually imposes a tax, rather than a fee, their argument should be directed to the political arena of debate among the electorate where the merits of that point can be argued. The Secretary's use of the term "fee" in the ballot title, as it was used in the proposed measure, itself, is neither misleading nor inaccurate.

■ The applicants' other objections to the ballot title are equally unavailing. The questions of who will ultimately bear the charges imposed by the measure, how the charges are to be computed, and to what extent collected funds will be used for administration rather than recycling and pollution cleanup are social and political issues that fall outside the scope of the ballot title. An attempt by the Secretary to include a fair and impartial discussion of all of those matters in the ballot title, would create the antithesis of the "short and concise" statement required by Section 16.1–01–09, N.D.C.C.

■ The applicants specifically objected to the Secretary's summary of the calculation of the fee imposed by the measure on waste generated more than 100 miles from a disposal site. The text of the proposed measure uses the term "fee actually charged" for the calculation. However, in summarizing the formula for calculating the fee, the Secretary substituted the term "actual cost of disposal." Apparently, the Secretary was trying to simplify the formula in his explanation so the voters could more easily understand it. Whatever the Secretary's reasoning, we conclude that the language he used was not misleading so as to improperly influence an elector's vote on the merits of the measure.

■ If a summary is not clearly misleading, the courts will not interfere with a choice of language that reflects the purpose of the proposed measure, even though the language used is not the most precise or exact wording possible. *Matter of Increase of Taxes on Tobacco Products,* 756 P.2d 995, 999 (Colo.1988). A ballot title is not rendered unfair simply because it does not contain every detail of a measure or does not explain how the measure will work in every situation. *Ferstl, supra.* We conclude that the Secretary's explanation of the calculation fairly explains the import of the measure's charges on waste hauled in excess of 100 miles. We also conclude that the entire ballot title fairly summarizes the initiated measure and sufficiently informs the voters of its import so they can cast their votes with a fair understanding of it.

The applicants also objected to the Secretary's approval of the form of the petition. They asserted that the Secretary should not have approved the petition, because the proposed measure's scheme for computing the fee on waste disposal was vague and

confusing and because the measure inadequately described the conduct which could result in the imposition of criminal sanctions thereunder. The applicants also asserted that the form of the petition should not have been approved because the measure authorizes the Department of Health and Consolidated Laboratories to administer the fund, which, they alleged, contravened the North Dakota Constitution's requirement that public money be expended only by legislative appropriation.

Under Art. III, § 2, N.D. Const., a petition to initiate a measure must be presented to the Secretary for approval "as to form," and the Secretary "shall approve the petition for circulation if it is in proper form and contains the names and addresses of the sponsors and the full text of the measure."

The Legislature, under Section 16.1–01–09, N.D.C.C., has set forth the proper form for a referendum or initiative petition:

"A referendum or initiative petition must be in substantially the following form:

### "REFERENDUM [INITIATIVE] PETITION
### TO THE SECRETARY OF STATE,
### STATE OF NORTH DAKOTA

"We, the undersigned, being qualified electors request [House (Senate) Bill _____ passed by the _____ Legislative Assembly] [the following initiated law] be placed on the ballot as provided by law.

### "SPONSORING COMMITTEE

"The following are the names and addresses of the qualified electors of the state of North Dakota who, as the sponsoring committee for the petitioners, represent and act for the petitioners in accordance with law:

"Name Address

_____ (Chairman) _____

### "BALLOT TITLE

"(To be drafted by the secretary of state, approved by the attorney general, and attached to the petition before circulation.)

### "FULL TEXT OF THE MEASURE

"IF MATERIAL IS UNDERSCORED, IT IS NEW MATERIAL WHICH IS BEING ADDED. IF MATERIAL IS OVERSTRUCK BY DASHES, THE MATERIAL IS BEING DELETED. IF NO MATERIAL IS UNDERSCORED OR OVERSTRUCK, THE MEASURE CONTAINS ALL NEW MATERIAL WHICH IS BEING ADDED.

"[The full text of the measure must be inserted here.]

### "INSTRUCTIONS TO PETITION SIGNERS

"You are being asked to sign a petition. You must be a qualified elector. This means you are eighteen years old, you have lived in North Dakota thirty days, and you are a United States citizen. All signers must add their entire post-office address, including post-office box number, and the date of signing. Every qualified elector signing a petition must do so in the presence of the person circulating the petition.

### "QUALIFIED ELECTORS

| Month, Day, Year | Name of Qualified Elector | Post–Office Address Residential Address or P.O. Box No. | City, State |
|---|---|---|---|
| 1. | | | |
| 2. | | | |
| 3. | | | |
| 4. | | | |
| 5. | | | |
| 6. | | | |
| 7. | | | |
| 8. | | | |

"The number of signature lines on each page of a printed petition may vary if necessary to accommodate other required textual matter. In this section for referral petitions 'full text of the measure' means the bill as passed by the legislative assembly excluding the session and sponsor identification. In this section for initiative petitions 'full text of the measure' means an enacting clause which must be: 'BE IT ENACTED BY THE PEOPLE OF THE STATE OF NORTH DAKOTA' and the body of the bill. If the measure amends the law, all new statutory material must be underscored and all statutory material to be deleted must be overstruck by dashes. When repealing portions of the law, the measure must contain a repealer clause and, in brackets, the text of the law being repealed.

"Each copy of any petition provided for in this section, before being filed, must have attached thereto an affidavit executed by the circulator in substantially the following form:

"State of North Dakota )
 ) ss.
"County of _____ )
 (county where signed)

"I, _____, being duly sworn, depose and say
 (circulator)

"that I am a qualified elector; that I reside at _____; (address)

"that each signature contained on the attached petition was executed in my presence; and that to the best of my knowledge and belief each person whose signature appears on the attached petition is a qualified elector; and that each signature contained on the attached petition is the genuine signature of the person whose name it purports to be.

_____
(signature of circulator)

"Subscribed and sworn to before me this _____ day of _____,
19___, at _____, North Dakota.
 (city)

"(Notary Seal) _____

(signature of notary)
Notary Public, North Dakota
My commission expires _____ "

---

The applicants did not argue that the approved petition did not comply with the statutory requirements for form. Instead, their objections went to the heart of the substance and meaning of the text of the proposed measure.

In defining the term "form," *Black's Law Dictionary*, 651 (6th ed. 1990) explains that it is the antithesis of "substance:"

"In contradistinction to 'substance,' 'form' means the legal or technical manner or order to be observed in legal instruments or juridical proceedings, or in the construction of legal documents or processes. Antithesis of 'substance.' ..."

Form is to be distinguished from substance. Art. III, § 2, N.D. Const., limits the Secretary's review to whether the petition "is in proper form and contains the names and addresses of the sponsors and the full text of the measure." It does not authorize a review of the substance or merits of the text of the measure. When a petition is challenged, neither the Secretary nor this court should be concerned with the substance or merit of the proposed measure, because under our system of government, the resolution of a proposal's merit rests with the electorate. *See Matter of Increase of Taxes on Tobacco Products, supra,* 756 P.2d at 998.

The applicants mistakenly relied upon *State ex rel. Askew v. Meier,* 231 N.W.2d 821 (N.D.1975), as precedent for allowing or requiring the Secretary to examine the substance of an initiated measure in deciding whether the matter should be placed on the ballot. In *Askew,* the state Legislature passed a resolution ratifying a proposed

amendment to the United States Constitution, commonly known as the Equal Rights Amendment. Petitions were filed to refer the resolution. We concluded that the act of ratification by the Legislature was authorized by the federal constitution, and, therefore, the resolution was not subject to referral under state law. We enjoined the Secretary from placing the referendum on the ballot. *Askew* involved a unique procedural question not present in the case before us, whether the matter was referable at all. The *Askew* decision did not involve the scope of the Secretary's review under Art. III, § 2, N.D. Const., for approving the form of an initiated petition. Consequently, the *Askew* decision is not authority for the proposition that the Secretary may examine the substance of an initiated measure.

Neither do our more recent cases support the applicants' contention that the Secretary must examine the substance and merit of a proposed initiated measure. In *Haugland v. Meier*, 335 N.W.2d 809, 811 (N.D. 1983), we held that the Secretary should not have approved a referendum petition that contained in its Statement of Intent an extraneous statement, arguably constituting "improper editorial comment ... misleading and incorrect." Concluding that extraneous statements must be eliminated prior to approval of a referral petition, we noted, however, that "[n]either the secretary of state nor this court should be in the position of exercising a subjective judgment in considering the form of the petition." *Haugland v. Meier, supra,* 335 N.W.2d at 810, n. 1. Similarly, in *Lips v. Meier,* 336 N.W.2d 346 (N.D.1983), we concluded that a referral petition's Statement of Intent contained impermissible extraneous statements that should have been deleted by the Secretary. Again, in *Haugland v. Meier,* 339 N.W.2d 100, 106 (N.D. 1983), we determined that introductory language in a referral petition that was "inaccurate and misleading," and "serve[d] no useful purpose" should have been deleted by the Secretary. In each of these cases, our review of the Secretary's approval of a referral petition focused upon whether prefatory language, inserted by the sponsors, contained improper, extraneous statements. Those extraneous statements consisted of the sponsors' editorial comments about the legislative enactment being referred. These cases stand for the proposition that the Secretary is obliged to strike extraneous editorial comment from referral petitions, not that he must examine the substance or merit of a proposed initiated measure in approving the petition as to its form. There is no allegation that the petition in this case contains improper, extraneous statements.

We hold that the Secretary's constitutional responsibility under Art. III, § 2, N.D. Const., to approve the form of a petition, is limited to ascertaining whether the petition complies with the statutory requirements for form and whether the petition contains impermissible, extraneous statements. In reviewing a petition for form, the Secretary must not be concerned with the merits of the petition or with the substance of its text.

█ As to the constitutional attacks on the proposed measure, we believe they are premature. In effect, the applicants have asked for an advisory opinion on a proposed measure that is not yet law about questions that are not ripe for review. But, we do not give advisory opinions on questions that are not ripe for review. *Mullins v. N.D. Dept. of Human Services,* 483 N.W.2d 160 (N.D.1992). This court will not entertain a request to test the validity or constitutionality of a proposed statute on the ground that if it is enacted, it would impinge on the litigant's rights. *Anderson v. Byrne,* 62 N.D. 218, 242 N.W. 687 (1932). Until the issue of constitutionality arises in an actual, litigated controversy, a determination of the constitutional question would be an advisory opinion. *Boedecker v. St. Alexius Hospital,* 298 N.W.2d 372 (N.D. 1980).

For the reasons expressed in this opinion, we issued an order on September 4, 1992, vacating the August 20, 1992, temporary injunction and denying the request for permanent injunctive relief.

ERICKSTAD, C.J., VANDE WALLE and JOHNSON, JJ., and VERNON R. PEDERSON, Surrogate Judge, concur.

VERNON R. PEDERSON, Surrogate Judge, sitting in place of MESCHKE, J., disqualified.